Filed 11/21/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| NIVIDA LUBIN et al., | B244383 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct., JCCP No. 4545.) |
| v. | |
| THE WACKENHUT CORPORATION, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, William F. Highberger, Judge.  Reversed and remanded.

Weinberg, Roger & Rosenfeld, Emily P. Rich, Theodore Franklin, Manuel A. Boigues; Posner & Rosen, Howard Z. Rosen, Jason C. Marsili, Brianna M. Primozic; James R. Hawkings, James R. Hawkings, and Gregory E. Mauro, for Plaintiffs and Appellants.

Gibson Dunn & Crutcher, Theodore J. Boutrous, Jr., Theane Evangelis, Bradley J. Hamberger, Jennifer E. Rosenberg; Gordon & Rees, Stephen E. Ronk, Mollie Burks-Thomas, and Michelle L. Steinhardt for Defendant and Respondent.

Horvitz & Levy, John A. Taylor, Jr., Felix Shafir, and Robert H. Wright for Chamber of Commerce of the United States of America, National Association of Security Companies, and California Association of Licensed Security Agencies as Amici Curiae on behalf of Defendant and Respondent.

---

Appellants Nivida Lubin, Sylvia M. Maresca, and Kevin Denton (together plaintiffs) filed this action on behalf of themselves and similarly situated persons, alleging defendant and respondent The Wackenhut Corporation (Wackenhut)[1] violated California labor laws by failing to provide employees with off-duty meal and rest breaks and by providing inadequate wage statements.  The trial court initially granted plaintiffs' motion for class certification.  However, as the case approached trial, the United States Supreme Court reversed a grant of class certification in *Wal-Mart Stores, Inc. v. Dukes* (2011) 564 U.S. 338 (*Wal-Mart*).  Relying on *Wal-Mart,* Wackenhut moved for decertification.  The trial court granted the motion.  Plaintiffs appeal, contending that decertification was not warranted by a change in circumstances or case law and that the court used improper criteria in granting the motion for decertification.  We

---

[1]     In 2010, the Wackenhut Corporation officially changed its name to G4S Secure Solutions (USA) Inc.

conclude that the trial court erred in granting the motion.

## FACTUAL AND PROCEDURAL SUMMARY

Wackenhut is an international security solutions company, employing thousands of private security officers who are assigned to provide physical security services to a variety of clients, including commercial businesses, governmental entities, gated communities, industrial facilities, oil refineries, banks, warehouses, medical clinics, schools, and retail centers. In California, Wackenhut delivers security services from eight area branch offices: San Diego, Orange County, Los Angeles, San Fernando Valley, Riverside, San Jose, San Francisco, and Sacramento. These offices are overseen by general managers, who report to a single regional vice-president responsible for the California region.

Plaintiffs are former security officers employed by Wackenhut. In the operative pleading, they allege that Wackenhut violated the California Labor Code by failing to provide off-duty meal periods, failing to authorize and permit off-duty rest breaks, and providing inadequate wage statements. Employers generally are required to provide a 30-minute off-duty meal break for employees working more than five hours. (Cal. Code Regs., tit. 8, § 11040, subd. (11)(A).) An on-duty meal period is permitted only when the nature of the work prevents an employee from being relieved of all duty and the parties agree in writing to an on-duty paid meal break. The written agreement must include a provision allowing the employee to revoke it at any time. (*Ibid*.) Labor Code Section 226, subdivision (a) requires employers to provide an accurate itemized wage statement in writing to each employee. Among other things, the statement must show the total hours worked by the employee,

3

the inclusive dates of the period for which the employee is paid, all applicable hourly rates in effect during the pay period, and the corresponding number of hours the employee worked at each hourly rate.

Prior to class certification, plaintiffs moved to compel production of the on-duty meal agreements for all Wackenhut security officers working in California. The trial court denied the motion, finding the production would be burdensome and oppressive. Its denial was without prejudice to "further, more specific requests or interrogatories." In September 2009, plaintiffs, on behalf of themselves and all others similarly situated, moved for class certification. Their motion proposed the following five subclasses: "(a) All non-exempt Security Officers employed by Wackenhut in California from January 7, 2001 through on or about May 23, 2008 who at the time of hire did not sign an on-duty meal period agreement that stated that the Security Officers could revoke the agreement and who were not provided with an off-duty meal period; [¶] (b) All non-exempt Security Officers employed by Wackenhut in California during the Class Period to work at one-officer posts and who, in accordance with the agreement between Wackenhut and its clients, were not provided an off-duty meal period; [¶] (c) All non-exempt Security Officers employed by Wackenhut in California during the Class Period to work at posts with multiple officers and who, in accordance with the agreement between Wackenhut and its clients, were not provided an off-duty meal period; [¶] (d) All non-exempt Security Officers employed by Wackenhut in California during the Class Period who were not authorized and permitted to take rest breaks; [and] [¶] (e) All non-exempt Security Officers employed by Wackenhut in

4

California who were not provided itemized wage statements during each pay period of the Class Period that contained all information specified in Labor Code section 226, subd. (a)."

On March 3, 2010, the trial court granted plaintiffs' motion, certifying the class as "'all non-exempt Security Officers employed by Wackenhut in California during the Class Period of January 7, 2001 to the present,'"[2] excepting proposed subclasses which the court found were unascertainable. Plaintiffs propounded an interrogatory on March 10, 2010, asking Wackenhut to provide the date on which each class member signed a meal period agreement that included revocation language. In a tentative ruling on May 6, 2010, the court stated that "[m]erits discovery in a certified class action which involves as many current and former employees as this case will inevitably be burdensome and time consuming. The parties may want to consider whether an agreement for statistically valid sampling might be acceptable in lieu of full discovery."

On November 19, 2010, Wackenhut objected to plaintiffs' interrogatory as unduly burdensome and instead offered plaintiffs a reasonable opportunity to inspect responsive documents. After several meet and confer sessions between November 2010 and January 2011, the parties agreed to use statistical sampling in lieu of document production or inspection. They entered into a stipulation under which Wackenhut agreed not to challenge the sampling on the grounds that a less than statistically significant number of personnel files were sampled or that there was a bias in the sample. Wackenhut "reserve[d] all rights to challenge, contest, dispute and/or object to the original

---

[2]     The class consists of approximately 10,000-13,000 security officers.

5

1,200 files selected by Plaintiffs for sampling as being an inappropriate sample for any [other] reason."

On June 20, 2011, the United States Supreme Court reversed a class certification order in *Wal-Mart, supra,* 564 U.S. 338. Subsequently, on September 23, 2011, Wackenhut moved for decertification, citing *Wal-Mart* as a significant change in law justifying reconsideration of class certification. In their opposition to Wackenhut's motion, plaintiffs again proposed five subclasses as a way to obviate some of the concerns raised in Wackenhut's motion.[3]

Following hearings on Wackenhut's motion, the trial court directed Wackenhut to submit a proposed order granting decertification. Before the court entered a formal order, the

---

[3]     Plaintiffs proposed the following five subclasses: "(1) INVALID MEAL PERIOD AGREEMENT SUBCLASS: All non-exempt Security Officers employed by Wackenhut in California from January 7, 2001 through on or about May 23, 2008 who did not sign a valid on-duty meal period agreement and worked at a post with an on-duty meal period; [¶] (2) SINGLE-OFFICER SITE SUBCLASS: All non-exempt Security Officers employed by Wackenhut in California during the Class Period at single-officer sites with an on-duty meal period; [¶] (3) MULTI-OFFICER SITE SUBCLASS: All non-exempt Security Officers employed by Wackenhut in California during the Class Period at multi-officer sites with an on-duty meal period; [¶] (4) REST PERIOD SUBCLASS: All non-exempt Security Officers employed by Wackenhut in California during the Class Period who were required to remain at their post during their on-duty meal period; [¶] [and] (5) ITEMIZED WAGE STATEMENT SUBCLASS: All non-exempt Security Officers employed by Wackenhut in California who were not provided itemized wage statements during each pay period of the Class Period that contained all information specified in Labor Code section 226, subd. (a)."

California Supreme Court issued its decision in *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004 (*Brinker*), resolving issues in the handling of wage and hour class certification motions. The parties stipulated to further briefing on application of *Brinker* and decertification of the class. The court conducted an additional hearing on the *Brinker* briefings but declined to modify its previous ruling decertifying the class. The court's order granting Wackenhut's decertification motion stated two main bases for its ruling: (1) that individualized issues predominated; and (2) that there was no way to conduct a manageable trial of plaintiffs' claims.[4] The order was entered on August 1, 2012. An order denying certification to an entire class is an appealable order. (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435.)

This timely appeal followed.

## DISCUSSION

### I

A. *Standard of Review*

"The party advocating class treatment must demonstrate the existence of an ascertainable and sufficiently numerous class, a well-defined community of interest, and substantial benefits from certification that render proceeding as a class superior to the alternatives. [Citations.] 'In turn, the "community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who

---

[4]     Because the trial court issued an extensive 24-page order, we discuss the specific reasoning for granting decertification as to each claim in the pertinent discussion subsection.

can adequately represent the class.'" [Citation.]" (*Brinker, supra,* 53 Cal.4th at p. 1021.)

The factor at issue in this appeal is predominance. "The 'ultimate question' the element of predominance presents is whether 'the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' [Citations.] The answer hinges on 'whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment.' [Citation.] A court must examine the allegations of the complaint and supporting declarations [citation] and consider whether the legal and factual issues they present are such that their resolution in a single class proceeding would be both desirable and feasible. 'As a general rule if the defendant's liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages.' [Citations.]" (*Brinker, supra,* 53 Cal.4th at pp. 1021-1022, fn. omitted.)

Any party may file a motion to decertify a class. (Cal. Rules of Court, rule 3.764(a)(4).) In *Green v. Obledo* (1981) 29 Cal.3d 126, 147, the California Supreme Court held that "a class should be decertified 'only where it is clear there exist changed circumstances making continued class action treatment improper.' [Citation.]" (*Id.* at p. 148; see also *Weinstat v. Dentsply Internat., Inc.* (2010) 180 Cal.App.4th 1213, 1226 [decertification requires new law or newly discovered evidence showing changed circumstances].) The court also pointed out that "if unanticipated or unmanageable individual issues do

arise, the trial court retains the option of decertification." (*Sav-on Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 335 (*Sav-on*).)

We review a decertification order for abuse of discretion. (*Brinker, supra,* 53 Cal.4th at p. 1022; *Sav-On, supra,* 34 Cal.4th at p. 326.) A trial court ruling supported by substantial evidence generally will not be disturbed unless improper criteria were used or erroneous legal assumptions were made. (*Sav-On*, at pp. 326-327.) "An appeal from an order denying class certification presents an exception to customary appellate practice by which we review only the trial court's ruling, not its rationale. If the trial court failed to conduct the correct legal analysis in deciding not to certify a class action, "'an appellate court is required to reverse an order denying class certification . . . , 'even though there may be substantial evidence to support the court's order.'"" [Citation.] In short, we "'consider only the reasons cited by the trial court for the denial, and ignore other reasons that might support denial." [Citation.]' [Citations.]" (*Alberts v. Aurora Behavioral Health Care* (2015) 241 Cal.App.4th 388, 399 (*Alberts*).)

"Nearly a century ago, the Legislature responded to the problem of inadequate wages and poor working conditions by establishing the [Industrial Welfare Commission (IWC)] and delegating to it the authority to investigate various industries and promulgate wage orders fixing for each industry minimum wages, maximum hours of work, and conditions of labor. [Citations.] Pursuant to its 'broad statutory authority' [citation], the IWC in 1916 began issuing industry-and occupation-wide wage orders specifying minimum requirements with respect to wages, hours, and working conditions [citation]. In addition, the

9

Legislature has from time to time enacted statutes to regulate wages, hours, and working conditions directly.  Consequently, wage and hour claims are today governed by two complementary and occasionally overlapping sources of authority:  the provisions of the Labor Code, enacted by the Legislature, and a series of 18 wage orders, adopted by the IWC.  [Citations.]" (*Brinker, supra,* 53 Cal.4th at p. 1026.)  "[T]he IWC's wage orders are entitled to 'extraordinary deference, both in upholding their validity and in enforcing their specific terms.'  [Citation.]" (*Id*. at p. 1027.)  "[T]he meal and rest period requirements [at issue] 'have long been viewed as part of the remedial worker protection framework.'  [Citation.]  Accordingly, the relevant wage order provisions must be interpreted in the manner that best effectuates that protective intent." (*Ibid*.)

  B. *Wal-Mart*

  The trial court found that Wackenhut's decertification motion was supported by changed circumstances because the Supreme Court decision in *Wal-Mart, supra*, 564 U.S. 338 created significant new case law, warranting a reassessment of class certification.  We begin with a brief overview of *Wal-Mart*, then address each of plaintiffs' claims and the court's application of *Wal-Mart* in its decertification order.

  *Wal-Mart, supra,* 564 U.S. 338, involved class certification of some 1.5 million current and former female employees, alleging that their employer, Wal-Mart, discriminated against them based on sex by denying them equal pay and promotions, in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, Title 42 United States Code section 2000e-1 et seq. (*Wal-Mart*, at p. 343.)  The Supreme Court reversed class certification because the plaintiffs did not offer significant proof

10

that Wal-Mart operated under a general policy of discrimination. (*Id*. at p. 353.) "The only corporate policy that the plaintiffs' evidence convincingly establishe[d was] Wal-Mart's 'policy' of allowing discretion by local supervisors over employment matters"; and even as to that, the plaintiffs could not identify "a common mode of exercising discretion that pervade[d] the entire company." (*Id*. at p. 355, italics omitted.)

Also at issue in *Wal-Mart* was the means by which the plaintiffs planned to establish liability and damages. Plaintiffs proposed to select a sample of class members for whom liability and damages would be determined. (*Wal-Mart, supra*, 564 U.S. at p. 367.) The percentage of those sample claims deemed to be valid would then be extrapolated to the remaining class and multiplied by the average back pay award in the sample set to determine the entire class recovery. (*Ibid*.) The Supreme Court disapproved this method, which it termed "Trial by Formula," finding it would prevent Wal-Mart from litigating its statutory defenses to individual claims. (*Ibid*.) Under Title VII, once a plaintiff makes a prima facie showing of discrimination, the burden shifts to the employer, which may avoid liability by showing that it took an adverse employment action against the employee for some reason other than discrimination. (*Wal-Mart*, at p. 366.)

As discussed below, the trial court's reliance on *Wal-Mart* to support decertification for each of plaintiffs' claims overextended holdings in that case. The crux of Wackenhut's motion for decertification and the court's subsequent order was *Wal-Mart*'s treatment of statistical sampling, even though statistical sampling had been introduced only in relation to one of plaintiffs' three claims, the meal period claim. Thus, although

11

the court had urged the parties to consider using statistical sampling to make the class action more manageable as to the meal period claim, it determined that this method was disapproved in *Wal-Mart*.

After the trial court issued its decertification order, the Supreme Court clarified that *Wal-Mart* does not "stand for the broad proposition that a representative sample is an impermissible means of establishing classwide liability." (*Tyson Foods, Inc. v. Bouaphakeo* (2016) ___ U.S. ___, ___ [136 S.Ct. 1036, 1048] (*Tyson*).) "A representative or statistical sample, like all evidence, is a means to establish or defend against liability. Its permissibility turns not on the form a proceeding takes—be it a class or individual action—but on the degree to which the evidence is reliable in proving or disproving the elements of the relevant cause of action." (*Id*. at p. 1046.) Thus, "[w]hether and when statistical evidence can be used to establish classwide liability will depend on the purpose for which the evidence is being introduced and on 'the elements of the underlying cause of action[]' [citation]." (*Ibid*.) In *Tyson*, a case involving a class of employees claiming that they did not receive statutorily mandated overtime pay for time spent "donning and doffing protective gear," the court upheld the use of statistical evidence to calculate the additional time class members spent donning and doffing, even though differences in the type of gear worn meant that plaintiffs may have taken different amounts of time to don and doff. (*Id*. at pp. 1042, 1048-1409.) The court distinguished *Wal-Mart*, explaining that "[w]hile the experiences of the employees in *Wal-Mart* bore little relationship to one another, in this case each employee worked in the same facility, did similar work, and was paid under the same policy. . . . [U]nder these

circumstances the experiences of a subset of employees can be probative as to the experiences of all of them." (*Tyson*, *supra*, at p. 1048.)

Here, statistical evidence was proposed only for the limited purpose of determining how many employees had signed on-duty meal agreements lacking revocation language during the class period. Plaintiffs already had established through deposition testimony that Wackenhut required all employees to sign on-duty meal agreements; that prior to 2004, most of the meal agreements lacked the required revocation language; that between 2004 and 2008 only new employees signed meal agreements with revocation language; and that it was only in 2008 and thereafter that all employees signed meal agreements with the required revocation language. As in *Tyson*, under these circumstances the percentage of the subset of employees who signed meal agreements lacking the required revocation language during a given time period is probative as to the percentage of the class that signed meal agreements lacking the required revocation language. Although, as *Tyson* has made clear, *Wal-Mart* does not prohibit the broad use of statistical sampling in class action lawsuits, as we discuss below, the decision whether to allow statistical evidence ultimately is within the discretion of the trial court.

Throughout its order the court also found that individualized inquiries were necessary because, pursuant to *Wal-Mart*, Wackenhut was entitled to defend by proving that, even if plaintiffs presented evidence that it had a general policy of not providing valid meal or rest breaks, in practice some employees were afforded an off-duty meal or rest break. This rationale misapplies *Wal-Mart*. In *Wal-Mart*, the Supreme Court

13

found that plaintiffs failed to present evidence establishing the existence of a common policy of discrimination. In this case, when it originally certified the class, the trial court found that plaintiffs had presented sufficient evidence that Wackenhut had policies and practices that violated wage and hour laws. Because plaintiffs met their burden of establishing a common policy, whether an individual was permitted to take a valid meal or rest break on any given day is a question of damages. (See *Brinker, supra,* 53 Cal.4th at p. 1022 ["'As a general rule if the defendant's liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages'"].)

The distinctive nature of Title VII liability also distinguishes *Wal-Mart* from the facts of this case. Individualized inquiries were necessary in *Wal-Mart* because under Title VII, once the plaintiff has made a prima facie showing of a discriminatory action, the burden shifts to the defendant to show that the adverse employment action was made for a nondiscriminatory employment reason. A defendant's right to prove that an adverse employment action as to a specific employee was taken for a nondiscriminatory reason, will necessarily have to be individualized. The wage order governing meal and rest breaks at issue in this case does not have the same individualized burden-shifting mechanism as Title VII. If plaintiffs have made a showing that Wackenhut had a policy or practice that violated California wage and hour laws, any defense asserted by Wackenhut can also be presented on a classwide basis. (See *Bradley v. Networkers International, LLC* (2012) 211 Cal.App.4th 1129, 1150 (*Bradley*) [employer's defense that meal

14

and rest break policy was legally sufficient was also matter of common proof].)

II

A.    *Meal Period Claim*

IWC wage order No. 4-2001, codified in California Code of Regulations, title 8, section 11040, subdivision (11)(A), governs an employer's obligation to provide meal breaks to hourly security guard employees. (*Faulkinbury v. Boyd & Associates, Inc.* (2013) 216 Cal.App.4th 220, 233 (*Faulkinbury*).) Under that order, "[n]o employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee. Unless the employee is relieved of all duty during a 30-minute meal period, the meal period shall be considered an 'on duty' meal period and counted as time worked. An 'on duty' meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time." (Cal. Code Regs., tit. 8, § 11040, subd. (11)(A).)

"An employer's duty with respect to meal breaks . . . is an obligation to provide a meal period to its employees. The employer satisfies this obligation if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so." (*Brinker, supra,* 53 Cal.4th at p. 1040.)

15

Wackenhut's standard practice was to have all new security officers sign an on-duty meal agreement during orientation. It then allowed its clients to determine whether Wackenhut security officers would be provided an on-duty or off-duty meal period at each site. The vast majority of clients preferred to provide on-duty meal periods.

In its decertification order, the trial court explained that it previously had found that common questions predominated as to plaintiffs' meal period claim because evidence supported plaintiffs' allegation that Wackenhut had a uniform practice of allowing clients to decide whether meal periods would be on-duty or off-duty, rather than Wackenhut performing the required analysis of determining whether the nature of the work at each site prevented employees from being relieved of all duties for their 30-minute meal period. The court explained that plaintiffs' theory was no longer viable because, pursuant to *Wal-Mart*, the question of how the employer decides which meal period to provide is not a "'common contention' that when answered will 'resolve an issue that is central to the validity of each one of the [class members'] claims in one stroke.' (*Wal-Mart, supra*, [564 U.S. at p. 350].)"

The trial court also found the testimony of Wackenhut managers was not sufficient to prove that in *every* case class members were provided with on-duty meal periods. Instead, the evidence only supported the conclusion that as a general matter, Wackenhut managers intended to provide on-duty meal periods at most, although not all, worksites.[5]

---

[5]     In a footnote, the court commented that "[i]n fact, the class as certified includes several worksites whose employees [were] undisputedly . . . provided with off-duty meal periods." We note

Accordingly, the court found that liability depended on an individualized assessment of the meal periods taken by each class member at each site. The court explained that individual inquiries were necessary pursuant to *Wal-Mart* because Wackenhut had a "right to defend itself by proving that, in practice, even at worksites that typically had on-duty meal periods, some class members were actually authorized to take off-duty meal periods, as evidence in the record suggest[ed]."[6]

In *Brinker,* the court instructed that for purposes of class certification, the focus must be on the policy the plaintiffs are challenging and whether the legality of that policy can be resolved on a classwide basis. (*Brinker*, *supra*, 53 Cal.4th. at pp.

that had the court granted plaintiffs' proposed subclasses, the outlier sites that provided off-duty meal periods (example: the San Francisco Conservatory of Music and Cricket Communications) would have been excluded from the class.

[6] The trial court cited to four employee declarations and one deposition as evidence that in practice some class members were authorized to take off-duty meal periods. However, in three of the declarations (those of Chowdhary, Call, and Kotov), the class members stated they were permitted to leave the premises or take their lunch where they wanted but that they understood they needed to be available to respond or assist in case of an emergency. (See *Brinker, supra,* 53 Cal.4th at p. 1040 [employer's duty to provide off-duty meal period satisfied if employer relieves "employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so"].) The deposition was of named plaintiff Nadin, who stated that on occasion, when she was relieved from her position working at City Hall East, she could leave to buy lunch.

1023-1024.) The court then considered the scope of an employer's duties under the relevant statutes and the IWC wage orders to afford rest and meal periods to employees. (*Id.* at pp. 1027-1028.) Regarding the meal period claim, the court concluded that "an employer's obligation when providing a meal period is to relieve its employee of all duty for an uninterrupted 30-minute period" and that an employee "'must be free to attend to *any* personal business he or she may choose during the unpaid meal periods.'" (*Id.* at pp. 1036, 1038, italics added.) Thus, the employee must be free to leave the premises. (*Ibid.*)

Here, rather than focusing on whether plaintiffs' theory of liability as described in their complaint – that Wackenhut violated wage and hour requirements by not providing officers with off-duty meal periods – was susceptible to common proof, the court focused on whether individualized inquiries would be required to determine whether in practice, officers ever received an off-duty meal period. (See *Benton v. Telecom Network Specialists, Inc.* (2013) 220 Cal.App.4th 701, 725 (*Benton*) [trial court employed improper criteria by focusing on whether individualized inquiry required to determine which technicians missed meal and rest periods, rather than focusing on plaintiffs' theory of liability, that employer violated wage and hour requirements by failing to adopt a meal and rest period policy].)

*Wal-Mart, supra,* 564 U.S. at page 350, requires class claims to depend on a common contention which "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Here, plaintiffs' theory at class certification was based on a common contention: that Wackenhut violated California labor

18

laws by failing to provide employees with off-duty meal periods. This violation resulted from Wackenhut's policy of requiring all employees to sign on-duty meal agreements and allowing client preference to dictate whether an employee had an off-duty or on-duty meal period, rather than itself determining, as the employer, whether the nature of the work at each site prevented its employees from having an off-duty meal period. Whether plaintiffs' theory has merit is a common question that is "capable of classwide resolution." (*Ibid*., see *Faulkinbury, supra,* 216 Cal.App.4th at p. 234 [employer's blanket policy requiring all new employees, regardless of individualized job duties, to sign an on-duty meal agreement is a classwide issue].)

Nor was the trial court correct in determining that *Wal-Mart* required individualized inquiries. In *Brinker*, *supra,* 53 Cal.4th at page 1022, the California Supreme Court explained that "'[a]s a general rule if the defendant's liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages.'" California appellate authority subsequent to the trial court's decertification order makes clear that, in the context of meal breaks, whether a specific employee actually had a valid meal break on a given day is a question of damages, and does not preclude class certification. "Under the logic of [*Brinker*'s] holdings, when an employer has not authorized and not provided legally required meal and/or rest breaks, the employer has violated the law and the fact that an employee may have actually taken a break or was able to eat food during the workday does not show that individual issues will predominate in the litigation." (*Bradley, supra,* 211 Cal.App.4th at p. 1151, italics omitted.)

19

In *Alberts, supra*, 241 Cal.App.4th at page 407, the Court of Appeal held the trial court erred in requiring, at the certification stage, that plaintiffs demonstrate a "'universal practice' on the part of management to deny nursing staff the benefit of the Hospital's written break policy" and that the proper question was "whether plaintiffs had articulated a theory susceptible to common resolution." (*Ibid.*) *Alberts* explained that requiring plaintiffs to prove class members missed all breaks to which they were entitled was an "incorrect standard for certification that, as other courts have also found, if correct, would prevent certification of virtually any wage and hour class. (See, e.g., *Bufil v. Dollar Financial Group, Inc.* (2008) 162 Cal.App.4th 1193, 1207 (*Bufil*) ['a class is not inappropriate merely because each member at some point may be required to make an individual showing as to eligibility for recovery']); *Benton, supra,* 220 Cal.App.4th at pp. 725–728 [reversing order denying certification despite evidence that some putative class members received breaks].)" (*Alberts,* at p. 407.)

As *Faulkinbury, supra,* 216 Cal.App.4th at page 235 explains, "the employer's liability arises by adopting a uniform policy that violates the wage and hour laws. Whether or not the employee was able to take the required break goes to damages, and '[t]he fact that individual [employees] may have different *damages* does not require denial of the class certification motion.' [Citation.]"

1. *Nature of the Work Exception*

A key issue driving the court's decertification order on the meal period claim was its finding that Wackenhut's affirmative defense, the nature of the work exception, could not be adjudicated on a classwide basis, even if the class were divided

20

into subclasses as proposed by the plaintiffs, because common issues did not predominate.  The nature of the work exception has three express conditions:  (1) the nature of the work must prevent the employee from being relieved of all duty; (2) the employee must agree to the on-duty meal period in writing; and (3) the written agreement must provide that the employee may, in writing, revoke the agreement at any time.  (Cal. Code Regs., tit. 8, § 11040, subd. (11)(A).)  The nature of the work exception is an affirmative defense, and thus the burden is on the employer to plead and prove facts justifying on-duty meal periods.  (*Abdullah v. U.S. Security Associates, Inc.* (9th Cir. 2013) 731 F.3d 952, 958-959 (*Abdullah*).)

In the class certification order, the court found that common questions predominated because plaintiffs had shown Wackenhut had a uniform practice allowing clients to determine whether to provide on-duty meal periods, but in its decertification order, the court concluded that whether Wackenhut allowed client preference to dictate whether an officer was provided an on-duty meal period was not the correct inquiry.  Rather, the court concluded, even if Wackenhut had not made a determination whether the nature of the work prevented its employees from taking an off-duty meal period before allowing its clients to provide on-duty meal periods, it still was entitled to prove at trial whether on-duty meal periods actually were permissible due to the nature of the work.

In analyzing whether the nature of the work permitted on-duty meal periods, the trial court found that "because the duties and work environments differ dramatically amongst the class, the nature of the work performed by Wackenhut security officers [could not] be resolved on a classwide basis."  In reaching its

21

determination, the court considered a five factor test outlined by the Division of Labor Standards Enforcement (DLSE),[7] noting that California courts have yet to delineate the scope of the nature of the work exception. The five factors are (1) the type of work; (2) the availability of other employees to provide relief to an employee during a meal period; (3) potential consequences to the employer if the employee is relieved of all duty during the meal period; (4) the ability of the employer to anticipate and mitigate the consequences; and (5) whether work product or process will be destroyed or damaged by relieving the employee of all duty. The court explained that this was not an exhaustive list of factors and that the "'critical determination . . . whether an on-duty meal period may be lawfully provided by an employer is whether the employer can establish that the facts and circumstances in the matter point to the conclusion that the nature of the work prevents the employee from being relieved of all duty.'"

Plaintiffs argued that the differences among the class members were not significant because all security officers "'observe, patrol, protect, assist, and report'" and that differences in duties performed by class members did not prevent Wackenhut from taking steps to relieve class members of all duty for a 30-minute meal period. The court found that the DLSE test could not be applied on a classwide basis because even if class members

---

[7] "'The DLSE "is the state agency empowered to enforce California's labor laws, including IWC wage orders."' [Citation.] The DLSE's opinion letters, "'"while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance."'" [Citations.]" (*Brinker*, *supra*, 53 Cal.4th at p. 1029, fn. 11.)

shared some basic duties, Wackenhut "presented substantial evidence illustrating the profound differences among the various worksites and the nature of the work performed by its security officers."

Citing an opinion letter from the DLSE, the court also found that plaintiff's theory that Wackenhut could relieve workers at almost every work site was "based on the incorrect premise that if an employer can theoretically remake its business operations to provide an off-duty meal period, it should be required to do so and precluded from taking advantage of the nature of the work exception." The court also noted that even if plaintiffs' theory were correct, an analysis of what steps Wackenhut could have taken to provide off-duty meal periods would require numerous individualized inquiries.

Finally, the court found that plaintiffs' proposed subclasses did not make their meal-break claim more amenable to classwide treatment because the subclasses did not "eliminate the need for numerous individualized inquiries to determine whether the nature of the work performed by class members allowed for on-duty meal periods."

Two appellate decisions in class action cases particularly have analyzed the nature of the work defense in the context of the DLSE opinion letter: *Faulkinbury, supra,* 216 Cal.App.4th 220 and *Abdullah, supra,* 731 F.3d 952. Neither was available to the trial court in this case since both were published after the court granted Wackenhut's decertification motion. Each clarifies the scope of the nature of the work defense in the class action context. In *Faulkinbury*, as here, the plaintiffs were employees who worked for a private security guard company, Boyd. Boyd provided security services to a range of clients, including gated

residential communities, hospitals, commercial buildings, and retail stores. (*Faulkinbury*, at p. 225.) The plaintiffs alleged that when hired, they had to sign an agreement to take on-duty meal periods, and that they never took an off-duty meal break. "As a defense to class certification, Boyd asserted the nature of the work exception." (*Id.* at p. 234.) In response, plaintiffs argued "[l]iability turns on the issue whether Boyd's policy requiring all security guard employees to sign blanket waivers of off-duty meal breaks is lawful. That issue can be resolved on a classwide basis." (*Ibid.*)

In light of *Brinker,* the Court of Appeal found that whether Boyd's policy requiring all security guard employees to sign blanket waivers of off-duty meal breaks was lawful "can be resolved on a classwide basis." (*Faulkinbury, supra,* 216 Cal.App.4th at p. 234.) This is because "by requiring blanket off-duty meal break waivers in advance from *all* security guard employees, regardless of the working conditions at a particular station, Boyd treated the off-duty meal break issue on a classwide basis." (*Id.* at p. 234.) "Whether or not the employee was able to take the required break goes to damages, and "'[t]he fact that individual [employees] may have different *damages* does not require denial of the class certification motion."' [Citation.]" (*Id.* at p. 235.)

In *Abdullah, supra,* 731 F.3d 952, the Ninth Circuit reached the same conclusion in a case with strikingly similar facts. There, a class of private security guards working for U.S. Security Associates, Inc. (USSA) alleged violations of California labor laws. (*Id.* at pp. 954-956.) USSA guards worked at over 700 locations in California, including hotels, hospitals, warehouses, and construction sites. (*Id.* at p. 954.) USSA

challenged the district court's certification of a meal period subclass on the grounds that the plaintiffs had "not established 'commonality,' as required under Federal Rule of Civil Procedure 23(a)(2), or 'predominance,' as required under Rule 23(b)(3)." (*Id.* at p. 956.)

After noting that California courts had not addressed the substantive scope of the "nature of the work" exception, the Ninth Circuit reviewed several DLSE opinion letters concerning the parameters of that exception. (*Abdullah, supra,* 731 F.3d at pp. 958-959.) The court explained that the "DLSE has emphasized that the 'on-duty' meal period is a 'limited [] alternative' to the off-duty meal period requirement. DLSE Opinion Letter 2009.06.09 at 8. Critically, it is 'not described or defined as a *waiver* of an off-duty meal period,' *id.* (emphasis added), but rather as 'a *type* of meal period that can be lawfully provided only in those circumstances in which the three express conditions set forth in [the regulation] are satisfied.'" (*Abdullah,* at p. 959, fn. omitted.) The court identified two categories of work where the DLSE has found that the "nature of the work" exception applies: "(1) where the work has some particular, external force that requires the employee to be on duty at all times, and (2) where the employee is the sole employee of a particular employer." (*Ibid.*)

The court concluded that "the plaintiffs' claims [would] yield a common answer that [was] 'apt to drive the resolution of the litigation,'" as required by Federal Rules of Civil Procedure, rule 23(a)(2) and *Wal-Mart, supra,* 564 U.S. at pages 349-350. (*Abdullah, supra,* 731 F.3d. at p. 962.) The court explained:

> "[T]he DLSE letters make clear that 'the showing necessary to establish the "nature of the work"

25

exception is a high one.' In order to make such a showing, USSA had to demonstrate not just that its employees' duties varied, but that they varied to an extent that some posts would qualify for the 'nature of the work' exception, while others would not. It failed to do so. Indeed, USSA's sole explanation for why it requires on-duty meal periods is that its guards are staffed at single-guard locations. It does not argue that any particular posts would qualify for the 'nature of the work' exception *absent* the single-guard staffing model. In fact, when asked if he could think of 'examples' where 'the nature of the work requires an on-duty meal break,' [USSA's person most knowledgeable] testified that he could not. Thus, the crux of the issue is that the class members' duties do not allow for a meal break *solely because* no other guards are available to cover for them during their meal periods.

"Consider, for example, the illustrative list of duties that USSA has provided to demonstrate the variety of its employees duties:
"[T]he duties performed by security guards include patrolling parking lots; checking receipts; signing in and out trucks; setting up school parking lots and assisting with student drop-offs and pick-ups; inspecting vehicles; restraining unruly patients; escorting dead bodies; checking the inventory, mileage, and temperature of trucks; working undercover to catch shoplifters; monitoring

psychiatric patients; checking in employees and answering phones at a front desk; performing surveillance; and enforcing hotel quiet hours.

"These duties are undoubtedly distinct from one another, but the only reason any of them 'prevent' the employee from taking a meal period is because USSA has chosen to adopt a single-guard staffing model. *See* Cal. Code Regs., tit. 8, § 11040, subd. 11(A) (stating that an 'on-duty' meal period is permitted 'only when the nature of the work *prevents* an employee from being relieved of all duty' (emphasis added)).

"On this basis, we conclude that the merits inquiry will turn on whether USSA is permitted to adopt a single-guard staffing model that does not allow for off-duty meal periods—namely, whether it can invoke a 'nature of the work' defense on a class-wide basis, where the need for on-duty meal periods results from its own staffing decisions. Such an inquiry is permissible under *Brinker* and *Faulkinbury*; the latter clarified that an employer may be held liable under state law 'upon a determination that [its] uniform on-duty meal break policy [is] unlawful,' with the 'nature of the work' defense being relevant only to damages. *Faulkinbury,* [*supra,*] 216 Cal.App.4th at [p.] 235. Thus, the legality of USSA's policy is a 'significant question of law,' *Mazza* [*v. Am. Honda Motor Co.* (2012)] 666 F.3d [581,] 589, that is

27

'apt to drive the resolution of the litigation' in this case, *Wal-Mart*, [*supra*, 654 U.S.] at [pp. 349-350]." (*Abdullah, supra,* 731 F.3d at pp. 962-963, fns. omitted.)

Wackenhut, as the employer, was required to provide 30-minute off-duty meal periods to its employees. Because an "'on duty' meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to" (Cal. Code Regs., tit. 8, § 11040, subd. (11)(a)), it is the employer's obligation to determine whether the nature of the work prevents an employee from being relieved *before* requiring an employee to take an on-duty meal period.

In this case, Wackenhut, not its clients, is the employer and hence was responsible for determining whether the nature of the work at each site prevented its employees from being relieved of all duty during the meal break. Wackenhut offered no evidence that it made the determination on the basis of the five-factor test required by the DLSE: the "type of work, the availability of other employees to provide relief to an employee during a meal period, the potential consequences to the employer if the employee is relieved of all duty, the ability of the employer to anticipate and mitigate these consequences such as by scheduling the work in a manner that would allow the employee to take an off-duty meal break, and whether the work product or process will be destroyed or damaged by relieving the employee of all duty." (Dept. Industrial Relations, DLSE Opn. Letter No. 2002.09.04 (Sep. 4, 2002) p. 2.) Rather, the record indicates that Wackenhut allowed

client preference to dictate whether officers were provided on-duty or off-duty meal periods. Client preference cannot be determinative under the wage order. In the 2002 DLSE opinion letter, the department concluded that "an off-duty meal period must be provided unless [the five] factors, taken as a whole, decisively point to the conclusion that the nature of the work makes it virtually impossible for the employer to provide the employee with an off-duty meal period." (*Id*. at p. 2.) Thus, plaintiffs' claim that Wackenhut's common practice of allowing client preference to dictate whether meal periods were on-duty or off-duty, resulting in the vast majority of plaintiffs receiving on-duty meal periods in violation of IWC wage order No. 4-2001, is amenable to class treatment.

Wackenhut cannot discharge its duty by arguing that its clients who requested on-duty meal periods determined that the nature of the work prevented officers from being relieved of all duty. A similar issue was discussed in *Benton, supra,* 220 Cal.App.4th at page 729. In that case the court concluded that an employer's "affirmative obligation to authorize and permit meal and rest breaks" could not be discharged, even if a co-employer staffing company had adopted a lawful meal and rest break policy, in the "absence of any evidence showing that [the employer] took steps to ensure that the staffing company had such a policy in place." (*Ibid*.) We agree with that analysis. Thus, Wackenhut could not discharge its affirmative duty to provide lawful meal and rest breaks without presenting evidence that it had precautions in place to ensure that its clients considered and applied the five-factor test outlined by the DLSE in determining whether the "nature of the work" at each site

29

necessitated an on-duty meal period before requiring class members to take such meal periods.[8]

Wackenhut also has failed to show that individual issues predominate in this case. Plaintiffs argue that the nature of the work defense can be litigated on a classwide basis by showing

---

[8] The general manager of Wackenhut's San Diego branch office and former acting general manager of the Orange County and Long Beach branches testified in deposition that the decision whether to provide an on-duty or off-duty meal period is directed by the client, and that if the client says that an off-duty meal period is not acceptable he [the Wackenhut manager] does not discuss with the client why an off-duty meal period is not acceptable. The general manager of the San Francisco and San Jose branches testified that Wackenhut does discuss with clients which type of meal periods will be provided to Wackenhut employees, and that the reason for the discussion is that Wackenhut seeks to comply with the law and regulations. He explained, however, that the determination is made by looking at the "best interest of the security operations and operational continuity of the site," that Wackenhut does not have a preference as to whether its clients provide an on-duty or off-duty meal period, and that "if the customer says . . . [the employee] can leave the site, they can turn their radio off, they can sleep, whatever. They're not getting paid for it, I don't care. That's their unpaid meal period. As long as that is understood between Wackenhut and the customer, that's fine. That way we would go with the unpaid meal period." Similarly, Wackenhut's person most knowledgeable testified that at the Riverside branch, on-duty meal periods are determined by the client contract: if the client wants security for eight hours, then the employee will get a paid lunch in that period. There is no evidence that the proper test, whether the nature of the work prevented an employee from being relieved of all duty, was discussed with clients. (Cal. Code Regs., tit. 8, § 11040, subd. (11)(A).)

that regardless of variations in specific job assignments, Wackenhut could have relieved class members of all duty for meal periods. Specifically, plaintiffs' security expert explained that Wackenhut could relieve officers for off-duty meal periods by (1) having officers and supervisors at multi-officer sites relieve each other; (2) having field supervisors who already travel from site to site, relieve officers for breaks; (3) increasing the current number of rover officers that Wackenhut already uses to report to different locations throughout the day to relieve officers for breaks; and (4) where clients agree, having employees of Wackenhut's clients relieve officers for breaks.

Wackenhut argues that individual issues predominate because the nature of the work exception can only be determined by inquiring into the details of each individual client, worksite, job post, and shift. If an employer, with employees working at multiple sites, with various job duties, had made individualized determinations regarding the nature of the work, and employees challenged whether those determinations were correctly made, class certification might be inappropriate because the employer should have an opportunity to defend each of those individualized determinations. But, in this case, since the employer did not analyze whether the nature of the work exception applies before requiring employees to take on-duty meal periods, it cannot rely on the nature of the work defense to bar class certification.

Individual issues also do not predominate because Wackenhut has treated the nature of the work exception on a classwide basis. As in *Faulkinbury*, *supra,* 216 Cal.App.4th 220, Wackenhut had all officers sign an on-duty meal agreement during orientation, regardless of each officer's job site or duties. And, similar to *Abdullah*, *supra*, 731 F.3d 952, although

31

Wackenhut presented evidence demonstrating the variety of duties that class members perform at different sites and even within a given site, it offered no evidence that the duties varied so that some posts would qualify for the "nature of the work" exception, while others would not.[9]  Nor has it shown why particular duties at any site would necessitate an on-duty meal period.  Deposition testimony of Wackenhut managers shows that clients were given the option of providing either on-duty or off-duty meal periods and, similar to *Abdullah*, the only explanation articulated for providing an on-duty meal period was a staffing decision - a client's preference for continuous coverage.

2.	*Invalid Meal Agreements*

The second and third conditions of the affirmative defense require that the employee sign a written agreement that specifies on-duty meal breaks and that also provides that the employee may, in writing, revoke the agreement at any time.  (Cal. Code Regs., tit. 8, § 11040.)  Plaintiffs' theory of liability is that "[e]ven if Wackenhut could meet the first prong of the nature of the work

---

[9]	Wackenhut offers the following examples of how duties vary from site to site:  a security officer stationed at the gate of an environmental facility is primarily concerned with controlling the flow of goods, people, and vehicles through the gate; a security officer stationed at a hotel is responsible for remaining visible and regularly patrolling the property; an officer stationed at a nuclear energy facility is required to check for leaks, odors, or other signs of damages that may indicate potential hazards; firearm-carrying officers are typically stationed outside certain bank branches and are responsible for deterring bank robberies; officers serving as jailers process inmates and engage in detail-specific tasks such as photographing and fingerprinting inmates; and armed officers who transport detainees perform pat downs to prevent contraband items from entering vehicles.

defense, [by proving] that it was unable to provide off-duty meal periods to its employees," it would still be liable for violations of the wage order under the second element because prior to 2004, the on-duty meal agreements did not contain the required revocation clause; beginning in 2004, only new hires signed meal agreements with revocation language; and it was not until 2008 that Wackenhut required all security officers to sign a meal agreement with a revocation clause.

In its decertification order, the trial court found that the plaintiffs' plan to use statistical sampling to determine the percentage of agreements that lacked revocation language was essentially indistinguishable from the method of proof rejected in *Wal-Mart*.  Specifically, the court noted that *Wal-Mart, supra,* 564 U.S. at pages 366-367, held "that the use of statistical sampling as a shortcut to create commonality where none exists is improper because it robs a defendant of the opportunity to defend against each individual claim and therefore impermissibly alters substantive law."  The court also noted that statistical sampling would "lead to imprecise individual recoveries . . . resulting in a windfall for some class members and leaving other class members under compensated."  Finally, the court noted that the *Brinker* concurrence recognized that under California law, a trial court has discretion to weigh the potential advantages and disadvantages of statistical inferences. Accordingly, the court explained that it was exercising its discretion in not allowing the use of statistical sampling because *Wal-Mart* illustrated that a significant disadvantage of statistical sampling is the elimination of a defendant's ability to raise defenses to individual claims.

The trial court also concluded that even if plaintiffs were to obtain every meal period agreement and attempt to prove liability without relying on statistical sampling, individual issues would still predominate. It explained that although examining each agreement and determining whether it contained revocation language would be nothing more than a "tedious and extensive audit that is not likely to result in many factual disputes," proving class members had signed invalid agreements would not, on its own, establish liability because plaintiffs would still have to prove that class members who signed invalid agreements also had "on-duty" meal periods.

Plaintiffs had proposed a subclass consisting of class members who signed meal agreements lacking a revocation clause who also worked at a post with an on-duty meal period. The trial court found the proposed subclass was not "readily ascertainable" because plaintiffs failed to define the class in objective terms without regard to the merits of the claim. The court noted that the "proposed subclass definition includes elements necessary to establish liability, and thus determining who is in the subclass would require an evaluation" of whether an agreement was invalid and whether meal periods were on-duty, which would require answering numerous individualized questions.

Even without statistical sampling, determining which employees signed a meal agreement that lacked a revocation clause can be ascertained. As discussed, the parties agreed to statistical sampling as an alternative to Wackenhut producing meal agreements for all class members or allowing plaintiffs to inspect Wackenhut's files. During the hearings on Wackenhut's decertification motion, the court warned Wackenhut that by

34

arguing, pursuant to *Wal-Mart*, that statistical sampling violated its due process rights, it waived its objection to limiting discovery of the meal agreements. In response, Wackenhut agreed to produce all of the meal agreements and engage in full discovery, noting that it was "not asking to have it both ways." The court acknowledged in its order that determining which class members signed a valid agreement would require nothing more than a "tedious and extensive" audit that is not likely to result in many factual disputes. Because California Code of Regulations, title 8, section 11040, subdivision (11)(A) provides that "[t]he written agreement shall state that the employee may, in writing, revoke the agreement at any time," determining whether an agreement is invalid would require nothing more than checking whether the agreement had a revocation clause.

Additionally, determining whether an employee, who signed a meal agreement that is invalid on this ground, also had "on-duty" meal periods, does not require numerous individualized questions. At the hearing on the motion for decertification, plaintiffs introduced a spreadsheet produced by Wackenhut. The spreadsheet was generated by a Wackenhut computer program and includes each employee's name, the client for whom the employee worked, address, start time, stop time, and a column on the right for nonpaid breaks. Plaintiffs argued that the spreadsheet could be sorted by the nonpaid break column, making it easy to ascertain which employees had a paid on-duty meal period. Wackenhut did not challenge the accuracy of the spreadsheet for determining which employees had off-duty meal periods. (See *Brinker, supra,* at p. 1053 (conc. opn. of Werdegar, J.) ["[i]f an employer's records show no meal period for a given shift over five hours, a rebuttable presumption arises that the

35

employee was not relieved of duty and no meal period was provided"]; see also *Cicairos v. Summit Logistics, Inc.* (2005) 133 Cal.App.4th 949, 963 [employers have duty to record their employees' meal periods].) Thus, the proposed subclass was ascertainable.

Further, the use of statistical sampling in this case is distinguishable from the method rejected by the Supreme Court in *Wal-Mart* because, in that case, the plaintiffs proposed to use representative evidence as a means of overcoming the absence of a common policy. (*Tyson, supra,* 136 S.Ct. at p. 1048.) In *Wal-Mart*, the only policy that plaintiffs were able to identify was that managers and supervisors had discretion in making employment decisions, a policy that in itself does not establish liability. (*Wal-Mart, supra,* 564 U.S. at p. 355.) Here, when the trial court originally certified the class, it found that plaintiffs had met their burden. They did so by proffering substantial evidence of a common practice by showing (through deposition testimony of Wackenhut managers) that meal agreements distributed between January 2001 and April or May 2004 lacked the required revocability clause, that meal agreements distributed between April or May 2004 and May 2008 contained the revocability clause but were signed only by new employees, and that it was not until May 2008, that Wackenhut distributed agreements with a revocability clause to all employees. Thus, unlike *Wal-Mart,* where the use of statistical sampling was the only evidence establishing liability, here, the results of the statistical sampling (calculating an average percentage of meal agreements lacking revocation language for each year between 2001-2008) served as a manageability tool – an alternative to burdensome production.

36

This case also is distinguishable from *Wal-Mart* because of the remedial nature of the Title VII claims at issue in that case. Title VII claims are susceptible to individualized determination of remedies because if a plaintiff prevails in showing that an employer has discriminated, the employer may be ordered to reinstate or hire the employee, with or without backpay. (*Wal-Mart, supra*, 564 U.S. at p. 366.) Thus, the determination of any given employee's remedy is highly individualized. Here, on the other hand, Wackenhut has not made a showing that allowing individualized inquiries as to which employees had signed an invalid meal agreement, rather than using a statistical analysis, would result in a significantly different aggregate liability.

At oral argument, Wackenhut relied on *Duran v. U.S. Bank National Assn.* (2014) 59 Cal.4th 1 (*Duran*). *Duran* was a wage and hour class action involving alleged misclassification that proceeded through trial to a verdict. (*Id*. at p. 12.) On appeal, the California Supreme Court concluded that sampling errors required reversal. (*Id*. at p. 49.) Specifically, the court found that the sample was not sufficiently representative or random and that there was an intolerably large margin of error. (*Id*. at pp. 42, 43, 46.) The court explained that "without following a valid statistical model developed by experts, the [trial] court improperly extrapolated liability findings from a small, skewed sample group to the entire class." (*Id*. at p. 33.) The court noted that individual issues may be managed through surveys and statistical sampling as long as "some glue" binds class members together apart from statistical evidence. (*Id*. at p. 31.)

Here, Wackenhut entered into a stipulation by which it agreed not to challenge the sample on grounds that a less than statistically significant number of personnel files were sampled

or that there was a bias in the sample. Wackenhut does not challenge the accuracy or reliability of the proposed sampling method. Additionally, the statistical sample provided a secondary source of proof and was agreed to as a manageability tool, not as plaintiffs' only form of proof. As discussed, at class certification plaintiffs offered testimony by Wackenhut managers that prior to 2004, the on-duty meal agreements did not contain the required revocation clause; beginning in 2004, only new hires signed meal agreements with revocation language; and it was not until 2008 that Wackenhut required all security officers to sign a meal agreement with a revocation clause. Thus, the testimony of Wackenhut managers and the meal agreements themselves constitute "some glue" that binds class members together apart from the statistical evidence.

The trial court's conclusion that statistical sampling will lead to over and under recovery has not been explicitly resolved by California courts, but statistical sampling has been approved as a method of determining damages. (*Williams v. Superior Court* (2013) 221 Cal.App.4th 1353, 1366, fn. 6; see also *Duran, supra,* 59 Cal.4th at p. 40 [statistical sampling to prove damages is less controversial than to prove liability because "the law tolerates more uncertainty with respect to damages than to the existence of liability"].)

In *Bell v. Farmers Ins. Exchange* (2004) 115 Cal.App.4th 715, 750, the court found that "from the perspective of the administration of justice, . . . an important negative consequence of the use of statistical sampling to calculate damages [is that] it necessarily yields an average figure that will overestimate or underestimate the right to relief of individual employees." (*Ibid.*) "Weighing against this disadvantage is the consideration that

statistical inference offers a means of vindicating the policy underlying the Industrial Welfare Commission's wage orders without clogging the courts or deterring small claimants with the cost of litigation. In a particular case, the alternative to the award of classwide aggregate damages may be the sort of random and fragmentary enforcement of the overtime laws that will fail to effectively assure compliance on a classwide basis." (*Id*. at p. 751, fn. omitted.) The court found that it was "within the discretion of the trial court to weigh the disadvantage of statistical inference—the calculation of average damages imperfectly tailored to the facts of particular employees—with the opportunity it afforded to vindicate an important statutory policy without unduly burdening the courts." (*Ibid*.)

Here, even if the trial court used its discretion to find that the disadvantages of statistical sampling outweighed the advantages, class certification of the meal break subclass was still appropriate because Wackenhut can produce the meal agreements or allow plaintiffs to inspect them.

B.    *Rest Break Claim*

"Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. . . . Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages." (Cal. Code Regs., tit. 8, § 11040, subd. (12)(A).) "If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of

39

compensation for each workday that the rest period is not provided."  (*Id.*, subd. (12)(B).)

Plaintiffs' complaint alleges that Wackenhut failed to permit and authorize employees off-duty rest breaks.  Prior to May 23, 2008, Wackenhut did not have a written policy authorizing or permitting rest breaks.[10]  Wackenhut argues that it did have such a policy, citing as evidence its policy under the Fair Labor Standards Act (29 U.S.C. § 201 et seq.) (FLSA), which became effective on August 3, 2005.  That policy provides that "Field and Headquarters management are responsible for scheduling employees; ensuring that employees accurately report their time worked; and maintaining accurate pay records of employees who report to them.  Field management is also responsible for complying with any applicable state or local law that provides employees with greater benefits and protections than the FLSA in the locations in which they operate."

When the trial court initially granted class certification, it "found that common issues predominated with respect to the rest period claim because . . . Wackenhut managers had testified in depositions that Wackenhut had a policy not to provide off-duty

---

[10]     Wackenhut created a California Addendum to its security officer handbook, which became effective on May 23, 2008.  The addendum included a provision that "[a]ll non-exempt employees of the Company are authorized and permitted to take one 10-minute rest break for every four hours worked."  The policy explains that "[r]est breaks are paid breaks and [the employee] will be compensated for the time spent on these breaks.  As a result, [the employee] may on occasion be called upon to perform work related activities during [the employee's] rest breaks.  If [a rest] break[] is interrupted because of such work related activities, [the employee] may take a 'make-up break,' for a full ten minutes as soon as practicable under the circumstances."

rest periods, and there is no nature of the work exception for off-duty rest periods." In its motion for decertification, Wackenhut did not present new evidence rebutting plaintiffs' evidence that prior to 2008, it had a uniform policy of not authorizing and permitting employees to take off-duty rest periods. Rather, Wackenhut challenged whether requiring employees to remain on the premises or be reachable by phone or radio, in the event that the rest period had to be interrupted in case of an emergency, meant that the rest period was "on-duty." Wackenhut also argued that "even if [it] had a policy not to provide off-duty rest periods (which it did not), in practice Wackenhut security officers overwhelmingly were able to take rest breaks."

In its decertification order, the court found that the deposition testimony of Wackenhut managers on which it had relied in its original class certification order did not "conclusively establish that Wackenhut had a policy of providing on-duty rest periods at every worksite, but instead show[ed] only that Wackenhut intended to place certain restrictions on rest periods at some worksites, and [that those] restrictions may or may not have rendered such rest periods on duty."

Application of the wage and hour order did not require plaintiffs to *conclusively* establish that Wackenhut had a policy of not providing rest periods at *every* worksite. (See *Brinker, supra,* 53 Cal.4th at p. 1022 [certification order relying on improper criteria reversible].) A standard requiring plaintiffs to "conclusively establish" that Wackenhut had a policy that violated wage and hour laws is improper because plaintiffs' burden at class certification is to produce *substantial* evidence. (See *Evans v. Lasco Bathware, Inc.* (2009) 178 Cal.App.4th 1417, 1422 [plaintiffs have burden of producing substantial evidence of

41

class action requisites, including predominance].) The proper inquiry for a predominance analysis is whether "'questions of law or fact common to the class predominate over the questions affecting the individual members.' [Citation.]" (*Sav-on, supra,* 34 Cal.4th at p. 329.) Predominance does not require plaintiffs to show that an employer's policy affected all members of the class. (*Id*. at p. 338; see also *Alberts, supra* 241 Cal.App.4th at p. 407 [trial court incorrect to require plaintiffs show at certification stage "'universal practice'"].)

The court also found that resolution of the rest period claim would involve numerous individualized inquiries because evidence in the record showed class members at many Wackenhut worksites were provided with rest periods that lacked any restrictions and appeared to be fully off-duty. Applying the same reasoning it applied to the meal period claim and again relying on *Wal-Mart*, the court explained that common issues no longer predominated because Wackenhut had a due process right to prove on an individualized basis that it provided off-duty rest periods to class members. The court cited declarations from two security officers and deposition testimony from plaintiff Lubin to support its finding that class members at many Wackenhut worksites were provided with rest periods that lacked any restrictions and appeared to be fully off-duty. The court also explained that "analyzing whether any restrictions placed on rest periods made them on-duty would require unmanageable individualized inquiries into the nature of the rest periods for each distinct worksite, shift, and security officer position." The court rejected plaintiffs' theory that if employees were required to remain on-duty for their meal break, it would follow that they also were required to remain on-duty for their rest periods.

Instead, the court found it was entirely possible for an employer to provide an off-duty rest break even if it chose to provide an on-duty meal period.

As we have discussed, *Wal-Mart* does not support Wackenhut's claim that it had a due process right to prove on an individualized basis that it provided off-duty rest periods to every class member. (See *Duran, supra*, 59 Cal.4th at p. 38 ["[n]o case, to our knowledge, holds that a defendant has a due process right to litigate an affirmative defense as to each individual class member"].) If plaintiffs had a policy or practice that violates labor laws, then class treatment is appropriate. (*Brinker, supra*, 53 Cal.4th at p. 1032.) Individualized inquiries into whether an employee had a required break on a specific day is relevant to damages, and "[t]he fact that individual [employees] may have different *damages* does not require denial of the class certification motion." (*Jaimez v. Daiohs USA, Inc.* (2010) 181 Cal.App.4th 1286, 1301.)

In *Faulkinbury, supra,* 216 Cal.App.4th at page 237, the defendant submitted declarations from employees in opposition to a motion for class certification. "Some declarations stated the employee was relieved of duties in order to take off-duty rest breaks; other declarations stated breaks were taken during periods of inactivity; at least one declaration stated the employee determined, based on the circumstances, when to take a rest break; and another declaration stated the employee frequently took rest breaks at her post." (*Ibid.*) The court explained that "in light of *Brinker,* this evidence at most establishes individual issues of damages, which would not preclude class certification" and that the defendant's "liability, if any, would arise upon a finding that its uniform rest break policy, or lack of policy, was

unlawful." (*Ibid.*)  Similarly, because the trial court in this case found that plaintiffs had made a showing that Wackenhut had a policy or practice of not providing off-duty rest breaks, anecdotal evidence that some employees had valid off-duty rest breaks does not preclude class certification; rather, it is evidence that is relevant to damages.

Determining whether restrictions placed on class members' rest breaks made them "on-duty" also is amendable to classwide treatment.  A DLSE opinion letter of February 2, 2002 explains that the 10-minute rest break must be consecutive and must be "duty-free."  (DLSE Opinion Letter of Feb. 2, 2002, Re: Rest Period Requirements.)[11]  However, unlike meal periods, there is no "on-duty" exception for rest breaks.  Thus, whether the restrictions Wackenhut placed on rest break made them "on-duty" (for example, requiring employees to remain "on-call") does not require individualized inquires; rather, it is a merits question that can be resolved on a classwide basis.  (See *Brinker, supra,* 53 Cal.4th at p. 1034 [whenever possible, courts should "determine class certification independent of threshold questions disposing of the merits"].)  Similarly, plaintiffs' theory that employees who were required to work on-duty for their meal periods, also were required to remain on-duty for rest breaks is a merits question that can be resolved on a classwide basis.

---

[11]     The Supreme Court has granted review in *Augustus v. ABM Security Services, Inc.*, review granted April 29, 2015, S224853, in which the certified issues are (1) whether Labor Code section 226.7 and IWC wage order 4-2001 require that employees be relieved of all duties during meal breaks, and (2) whether security guards who remain on call during rest breaks are "performing work" during that time under the analysis in *Mendiola v. CPS Security Solution, Inc.* (2015) 60 Cal.4th 833.

The trial court distinguished the facts of this case from *Brinker*, explaining that in *Brinker* "there was no dispute that the policy and the practice were one and the same. By contrast, Wackenhut denies that the written documents Plaintiffs focus on [the FLSA policy and the 2008 addendum] represent the full extent of the rest periods that it provided to class members." The court found that evidence in the record supported Wackenhut's position that although its written policies only provided guidance regarding the requirements of the FLSA, each region supplemented the policy with local requirements. As support, the court cited to deposition testimony from Michael Goodboe, Wackenhut's vice-president of human resources. Goodboe testified that the FLSA policy contained only "'a basic policy' that was 'not exhaustive in the sense that it's a policy for everybody everywhere.'" "Rather, Wackenhut 'offices would be expected to add to it' because 'there are state and local . . . enhancements to the legislation.'" The court also explained that "contrary to Plaintiffs' contention, . . . Mr. Goodboe did not testify that there were no enhancements for California, but only that he was personally unaware of the California enhancements." Accordingly, the court found that plaintiffs failed to prove, and Wackenhut had not conceded, that its written guidance concerning the FLSA represented the full extent of the rest periods that it authorized in California.

At class certification, plaintiffs presented deposition testimony from Wackenhut managers that the trial court credited as establishing that Wackenhut had a policy of not providing off-duty rest breaks. Wackenhut did not present evidence rebutting plaintiffs' evidence and has not shown that it had an informal policy or practice of authorizing and permitting employees to take

10-minute rest breaks.  (See *Brinker, supra,* 53 Cal.4th at p. 1033 [employer is required to permit and authorize required rest breaks, and if it adopts uniform policy that does not do so, then "it has violated the wage order and is liable"]; see also *Bufil, supra,* 162 Cal.App.4th at p. 1199 [onus is on employer to clearly communicate authorization and permission to employees].) Wackenhut may rebut plaintiffs' evidence of a lack of policy authorizing and permitting rest breaks by providing evidence of a uniform policy or practice.  However, while Mr. Goodboe did not testify that there are no enhancements for California, he did testify that he was unaware of any California enhancements, and Wackenhut has not presented any other evidence demonstrating that there were in fact California enhancements authorizing and permitting rest breaks.  Anecdotal evidence that some employees had rest breaks goes to damages and is not evidence of a uniform policy or practice. (*Faulkinbury, supra,* 216 Cal.App.4th at p. 237.)  Further, Wackenhut's defense that it had a policy or practice authorizing rest breaks is susceptible to classwide resolution. (See *Bradley, supra,* 211 Cal.App.4th at p. 1150 [plaintiffs' theory that employer lacked rest break policy and failed to authorize breaks are matters of common proof—although employer could potentially defend claims by arguing it had informal or unwritten rest break policy, this defense is also matter of common proof].)

       C.     *Wage Statement Claim*

Labor Code section 226, subdivision (a) provides: "[e]very employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees . . . an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee . . . (6) the inclusive dates of

46

the period for which the employee is paid . . . , and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee."

Pursuant to Labor Code section 226, subdivision (e)(1), an employee who suffers injury "as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees."

An employee is deemed to suffer injury for purposes of Labor Code section 226, subdivision (e)(2)(B) "if the employer fails to provide accurate and complete information as required" by subdivision (a), items (1) to (9) "and the employee cannot promptly and easily determine from the wage statement alone" the inclusive dates of the period for which the employee is paid or the applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee. (*Ibid.*)

In support of class certification, plaintiffs advanced two theories of liability regarding wage statements. First, that wage statements provided by Wackenhut lacked three items required by Labor Code section 226, subdivision (a): the inclusive dates of the pay period, regular rates of pay, and overtime rates of pay and second, that the wage statements failed to include premium wages earned for missed meal and rest breaks. The court originally granted class certification on the itemized wage

47

statement claim, pursuant to plaintiffs' second theory of liability, finding the claims were derivative of plaintiffs' meal and rest break claims.

In its decertification order, the trial court explained that because the wage statement claim was derivative and individual issues now predominated with respect to the meal and rest break claims, the wage statement claim was no longer suitable for class treatment. The court also found that plaintiffs' first theory of liability was not suited for class treatment because "[a]lthough determining whether Wackenhut's wage statements contained the required elements under Labor Code section 226(a) is a common question, proving that a required element was missing does not automatically establish liability. Instead, Plaintiffs must also prove that class members suffered injury as a result of the defect." The order went on to explain that plaintiffs had not identified a way in which the injury element could be proven on a classwide basis, "other than by making the unwarranted assumption that a mathematical injury necessarily results whenever a wage statement is deficient (which, if accepted would render Labor Code section 226(e)'s injury requirement meaningless)."

Subsequent to the court's order, the Legislature enacted Senate Bill No. 1255 to clarify what constitutes "suffering injury" for purposes of Labor Code section 226. (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1255 (2011-2012 Reg. Sess.) as amended Apr. 30, 2012, p. 1.) The legislative history of this statute is instructive. The enacting statute was a response to the "contradictory and inconsistent interpretations of what constitute[d] 'suffering injury' under Labor Code section 226 in the various court cases that ha[d] been litigated in recent years,"

48

which the Legislature found "threaten[ed] effective public and private enforcement of, and compliance with, wage statement requirements." (Sen. Rules Com., Off. of Sen. Floor Analyses, analysis of Sen. Bill No. 1255 (2011-2012 Reg. Sess.) as amended Aug. 23, 2012, p. 6; Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1255 (2011-2012 Reg. Sess.) as amended Apr. 30, 2012, p. 4.)

The bill, codified in Labor Code section 226, subdivision (e)(2)(B), clarifies that injury for purposes of recovery under subdivision (e)(1) is established if "the employee cannot promptly and easily determine from the wage statement alone" the inclusive dates of the period for which the employee is paid or the applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

Accordingly, we conclude that plaintiffs' wage statement claim is amenable to class treatment under both of plaintiffs' theories of liability. First, the question whether Wackenhut's wage statements contained the required elements under Labor Code section 226, subdivision (a) is a common question, and Labor Code section 226, subdivision (e)(2)(B)(i) clarifies that injury arises from defects in the wage statement, rather than from a showing that an individual experienced harm as a result of the defect. "An amendment which merely clarifies existing law may be given retroactive effect even without an expression of legislative intent for retroactivity. [Citations.]" (*Negrette v. California State Lottery Com.* (1994) 21 Cal.App.4th 1739, 1744; see also *Sandoval v. M1 Auto Collisions Centers* (N.D. Cal. 2015) 309 F.R.D. 549, 568 [whether defendants' statements were inaccurate and injured plaintiffs under Lab. Code, § 226 presents common questions].) Second, because plaintiffs' meal and rest

period claims are suitable for class treatment, their theory that the wage statements failed to include premium wages earned for missed meal and rest periods also is suitable for class treatment.

## DISPOSITION

The order is reversed, and the case is remanded as to off-duty meal break, rest brake, and wage statement issues, and for further proceedings consistent with this opinion. Appellants are entitled to their costs on appeal.

**CERTIFIED FOR PUBLICATION.**

EPSTEIN, P. J.

We concur:

WILLHITE, J.

MANELLA, J.