Filed 1/2/18; pub. order 1/23/18 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MICHAEL LAMPE et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>QUEEN OF THE VALLEY MEDICAL CENTER,<br><br>    Defendant and Respondent. | A146588<br><br>(Napa County<br>Super. Ct. No. 26-61568) |

**I.**

**INTRODUCTION**

Appellants Michael Lampe and Karen McNair appeal the trial court's order denying class certification of their wage and hour claims against Queen of the Valley Medical Center (QVMC). The trial court concluded that individualized issues predominated and the claims could not be proven efficiently as a class. We conclude substantial evidence supports the trial court's findings and it did not abuse its discretion in denying class certification. We affirm.

**II.**

**FACTUAL AND PROCEDURAL BACKGROUND**

QVMC is a full-service hospital with 94 departments. Appellants Lampe and McNair are nurses employed at QVMC. McNair previously worked 8-hour shifts as an operating room nurse, and in 2011 she became a relief charge nurse. As a relief charge

1

nurse, she determines when to provide meal breaks for the nurses she is supervising. Lampe works 12-hour shifts in the mother-child services department.

### A. Appellants' Fourth Amended Class Action Complaint and Motion to Certify Class

Beginning in 2011, appellants filed multiple versions of their complaint in this action in three different counties. The current complaint is the fourth amended class action complaint filed in Napa County, which alleges seven causes of action: (1) violation of Business and Professions Code section 17200 et seq.; (2) violation of Labor Code sections 206, 218, 226, 510, 1194, and 1198; (3) failure to pay meal break penalties under Labor Code sections 226.7 and 512, et seq.; (4) inaccurate wage statements under Labor Code section 226; (5) violation of the Private Attorney General Act (PAGA) under Labor Code sections 2698–2699; (6) unpaid wages due to illegal rounding under Labor Code sections 218, 510, 1194, 1197 and 1198 and; (7) failure to provide meal breaks under Labor Code sections 226.7 and 512.

Appellants filed a motion to certify an "overtime class," a "meal break class," and a "wage statement" class. The overtime class consisted of two subclasses: (1) employees who earned overtime bonuses where QVMC failed to properly calculate their regular rate of pay, and (2) alternative work schedule (AWS) employees who were asked to leave work between the eighth and twelfth hour of their shift who were not paid overtime wages.[1] The second class was the meal break class with a subclass of all employees who signed meal break waivers. The third class was derivative of the other classes and included any QVMC employee who received a pay stub.

Appellants alleged QVMC has a "company-wide policy of instituting and implementing unlawful wage-and-hour policies." They allege QVMC does not properly compensate AWS employees who work short shifts as required by California Code of Regulations, title 8, section 11050, subdivision 3(B)(2) (Wage Order No. 5-01(B)(2)). They contend that QVMC has no written policy to inform employees that they are entitled to overtime if they are flexed off their shift. Appellants argue QVMC failed to

---

[1] This is referred to as a "short-shift premium."

2

properly calculate employees' regular rate of pay. Appellants also assert that QVMC required employees to waive one of their two meal periods if they worked a 12-hour shift.

In support of their motion, appellants submitted deposition transcripts from the prior named plaintiffs, Concepcion Vinas and Editha Asuncion, along with deposition excerpts from the director of human resources, a payroll coordinator, three QVMC nurses with roles as supervisors or managers, and two experts. In his declaration, Lampe stated he was not aware he was entitled to a short-shift premium. He also stated he is not provided a second meal period when he works over a 12-hour shift.

QVMC filed an opposition to the class certification motion, arguing that appellants had failed to submit substantial evidence to support their theories, and pointing out that appellants only submitted their own declarations and offered no testimony from any proposed class members. QVMC argued that appellants raised AWS claims even though all AWS allegations were stricken from their complaint and they were sanctioned for repeatedly raising the claims.

Included with its opposition, QVMC submitted evidence to contradict Lampe's declaration. Lampe signed an AWS agreement which stated QVMC provides short-shift premiums if he worked more than 8 hours but less than a full 12-hour shift. The short-shift policy is also contained in the QVMC policy manual. Putative class members provided declarations that they were aware of the short-shift policy, including former named plaintiffs, Vinas and Asuncion. Fourteen putative class members declared they have never been required to leave work after eight hours on an AWS shift, and employees would often volunteer to leave early where a short-shift premium is not required. Twenty-five QVMC employees testified they were aware they were entitled to a meal break if they worked more than five hours and they were provided with their meal breaks. They were aware they were entitled to second a meal break if they worked more than 10 hours and they were offered that meal break. Respondent identified the various different and unique ways each department scheduled meal breaks.

QVMC produced evidence that it has an AWS and written short-shift policy that is included with each employee's AWS agreement. The QVMC Human Resources Policy

Manual (QVMC HR Manual) policy No. 335.1 states: "Employees will receive a short-shift payment if provided more than eight (8) hours, but less than twelve (12) hours of work on a regularly scheduled workday. QVMC will pay one and one-half times their regular rate for all hours worked in excess of eight hours on that regularly scheduled day." Lampe also signed an AWS agreement for 12-hour shifts.

QVMC explained it does not have a separate pay code for short-shift premiums; it shows up as overtime in the system, or on the pay stub. To determine if an employee was being paid a short-shift premium requires a review of the individual edit sheets, if available.

QVMC's meal break policy is to provide 30 minutes for each day of work over 5 hours, and a second meal break of at least 30 minutes for each day of work over 10 hours. The policy is the first meal break should be taken by the end of the fifth hour of work. An employee that works more than 10, but less than 12 hours in a workday, may waive one of his or her two meal periods. QVMC does not maintain centralized electronic records of employees who have signed or revoked meal period waivers. This information requires a person-by-person review of employee files.

For an employee to receive a meal period premium for waiving a meal period, the employee must complete a form notifying QVMC. QVMC regularly pays meal period premiums when requested.

Lampe voluntarily signed a meal period waiver. In the waiver, he requested to take his first meal break at the end of his sixth hour or later, and to waive the second meal break. McNair typically works an 8-hour shift, so she did not sign a meal break waiver.

McNair testified that when she is the relief charge nurse, if a nurse refuses to take a break, she instructs them to put "no break" on their timesheet so they can be paid a premium for the missed break.

After conducting a hearing, the trial court issued an order denying appellants' motion for class certification. The trial court cited *Duran v. U.S. Bank National Assn.* (2014) 59 Cal.4th 1, 28 (*Duran*) for the proposition that a class action may be maintained if there is " 'an ascertainable class and a well-defined community of interest among the

4

class members.' [Citations.] As part of the community of interest requirement, the party seeking certification must show that issues of law or fact common to the class predominate." (*Ibid.*) The ultimate issue for predominance is whether the common issues are so numerous and substantial that maintenance of a class action is advantageous to the judicial process and to the litigants. (*Ibid.*)

The trial court noted appellants sought to certify three classes and three subclasses and analyzed each in turn.

Class 1, the overtime class consisted of nonexempt 12-hour shift employees (from November 2007 to certification) and nonexempt non-12-hour shift employees (from February 2010 to certification). This could include employees from 94 departments who work full-time, part-time, per diem, and work every type of shift (day, night, on-call). The potential class included up to 358 different positions, including nurses, therapists, secretaries, clerks, gardeners, fitness instructors, social workers, transcriptionists, billers, and cooks.

Within the first overtime subclass were employees who earned nondiscretionary bonuses. Within the second subclass were employees who worked AWS who were not paid overtime when they were required to leave work between the eighth and twelfth hour of their shift.

Although the first and second subclass are not alleged in the operative complaint, the court nevertheless addressed the subclasses on the merits. The court found for the first subclass: "There is no evidence in the record that clearly shows what items were or were not included in the regular rate calculation, or any details as to why any of the items should or should not have been included." Appellants' expert does not identify what items were wrongly included or excluded. Also, for the first subclass, appellants "failed to articulate what group issues predominate. The vague assertion that the regular rate was miscalculated without any specific detail as to what pay codes were or were not included is insufficient."

For the second subclass, appellants contend employees were not paid when they flexed off their shift between the eighth and twelfth hour of work. QVMC stated hospital

5

policy was to pay the employee using the regular overtime code. The hospital does not record whether a short-shift premium is paid because it is recorded as overtime. Because this claim required individualized assessment of each employee, the court concluded this claim could not be proven efficiently as a class.

Class 2, the meal break class, consisted of 12-hour shift employees. This class included employees in 94 departments working in various types of positions similar to Class 1. The third subclass consisted of employees who signed meal waivers for the second meal break and worked over a 12-hour shift. The third subclass was not identified in appellants' complaint.

The trial court found that appellants had not supported their claims regarding meal periods with anything other than their own testimony. "Numerous employees have declared that they have always been able to take their full 30-minute meal periods, or that if they missed a meal period, they may request and have received a meal period premium." Appellant McNair had not signed a meal period waiver because she works an 8-hour shift, and appellant Lampe signed a waiver to voluntarily waive his meal break. The trial court concluded neither appellant is typical of the class they seek to certify.

The evidence presented disclosed a great variety in how meal periods are scheduled in different departments. Appellant McNair was responsible for scheduling meal breaks for the nurses in her unit which created a conflict between proposed members of the class. The trial court concluded that with the meal period claims, every member of the class would be required to litigate numerous and substantial questions regarding his or her right to recover, which depended on the department the employee worked in, the shift she or he had, whether a meal waiver had been signed, and the circumstances leading up to any meal waiver. "The difficulty in managing the individual issues renders class certification inappropriate as to the Meal Break Class."

Class 3, the wage statement class, consisted of employees who were provided a pay stub. "As class certification is not appropriate for the primary Overtime Class and Meal Break Class, class certification as to the Wage Statement Class is also inappropriate" because it is derivative of the other wage claims.

6

## III.

## DISCUSSION

### A.    Class Certification Standards

This state's public policy supports the use of class actions to enforce California's minimum wage and overtime laws for the benefit of workers.  (See *Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 340 (*Sav-On*).)  However, "because group action . . . has the potential to create injustice, trial courts are required to ' "carefully weigh respective benefits and burdens and to allow maintenance of the class action only where substantial benefits accrue both to litigants and the courts." ' " (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435.)

Under California law, the party seeking class certification must establish three things:  "[(1)] the existence of an ascertainable and sufficiently numerous class, [(2)] a well-defined community of interest, and [(3)] substantial benefits from certification that render proceeding as a class superior to the alternatives." (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1021 (*Brinker*).)  "The 'community of interest' requirement embodies three factors:  (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." (*Sav-On*, *supra*, 34 Cal.4th at p. 326.)

" '[E]ach member must not be required to individually litigate numerous and substantial questions to determine his [or her] right to recover following the class judgment . . . .' " (*Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 913.)  " '[T]he issues which may be jointly tried, when compared with those requiring separate adjudication, must be sufficiently numerous and substantial to make the class action advantageous to the judicial process and to the litigants.' " (*Id.* at pp. 913–914.)

The trial court should not grant class certification if individualized inquiries into job duties or other issues would predominate.  This is true even if there is evidence of common job descriptions, common classification criteria, and common policies and procedures. (*Mora v. Big Lots Stores, Inc.* (2011) 194 Cal.App.4th 496, 507–509.)

The trial court needs "to carefully weigh the respective benefits and burdens of a class action and to permit its maintenance only where substantial benefits will be accrued by both litigants and the courts alike." (*Reyes v. Board of Supervisors* (1987) 196 Cal.App.3d 1263, 1275.) A trial court's ruling on a motion for class certification is reviewed for an abuse of discretion. (*Sav-On*, *supra*, 34 Cal.4th at p. 326.) Trial courts " 'are ideally situated to evaluate the efficiencies and practicalities of permitting group action' " and therefore are " 'afforded great discretion' " in evaluating the relevant factors and in ruling on a class certification motion. (*Ibid.*)

## B.      Overtime Class

Appellants sought to certify two overtime subclasses: (1) employees who did not have their regular rate of pay correctly calculated, and (2) AWS employees who were not paid overtime when they were required to leave work between the eighth and twelfth hour of their shift.

Initially, we note the first and second subclasses are not identified in the operative complaint. The fourth amended complaint contains no AWS allegations. The trial court ordered the AWS allegations in the second amended complaint stricken. When appellants' counsel again included AWS allegations in the third amended complaint, the court sanctioned counsel $10,000 for reasserting the stricken claims. The sanctions were the subject of an appeal to this court that was affirmed in an unpublished decision, *Vinas v. Queen of the Valley Medical Center* (Oct. 20, 2016, A143541).

"A court must examine the allegations of the complaint" to determine "whether the legal and factual issues they present are such that their resolution in a single class proceeding would be both desirable and feasible." (*Brinker*, *supra*, 53 Cal.4th at pp. 1021–1022.) QVMC argues that the fourth amended complaint does not contain any allegations with respect to AWS employees, or the failure to pay short-shift premiums. It points out that simply because short-shift premiums are given the same pay code as overtime does not mean they are the same as overtime and the substance of the short-shift and regular rate claims are not the same.

8

The lack of connection between the complaint and the classes appellants seek to certify provides a basis for denial of the certification motion.  (See *Jones v. Farmers Ins. Exchange* (2013) 221 Cal.App.4th 986, 999 [court can deny class certification or strike certification motion where the plaintiffs seek certification that is beyond the scope of the pleadings].)  The trial court recognized this deficiency but addressed the subclasses on the merits.  We will, therefore, also address the claims on the merits.

### 1.    *Regular Rate Subclass*

Appellants argue QVMC failed to include all required amounts in the regular rate of pay before calculating overtime.

"Under California law, an employee must be paid overtime compensation for work performed in excess of eight hours in one day, calculated at one and one-half times the regular rate of pay.  (Lab. Code, § 510, subd. (a).)"  (*Huntington Memorial Hospital v. Superior Court* (2005) 131 Cal.App.4th 893, 899.)  An employee's overtime compensation is based upon his or her " 'regular rate' " of pay.  (*Id.* at p. 902.)

To support their allegations, appellants submitted an expert declaration from Dr. Richard Drogin, Ph.D., a statistician.  He evaluated Lampe's pay records over 195 pay periods, and McNair's over 165 pay periods.  He determined that the regular rate was not properly calculated for 130 out of 360 pay periods resulting in underpayment of $10,767 to Lampe, and $7,156 to McNair.  Although Dr. Drogin conducted an analysis of 75 employees regarding meal breaks, he provided no analysis on the regular rate payment for any employees except Lampe and McNair.

QVMC argues appellants failed to adequately identify the legal claim they seek to pursue on behalf of this class.  Appellants only list the various pay categories and claim some of the bonus or incentive categories were not included in the regular rate calculation.

For the regular rate subclass, the trial court found there was "no evidence in the record that clearly shows what items were or were not included in the regular rate calculation, or any details as to why any of the items should or should not be included."  Dr. Drogin did not identify what items were wrongly included or excluded.  This expert

9

listed bonus categories, but does not link them to appellants or other putative class members. The trial court found that appellants had not shown if they or other members of the class received or did not receive any of the listed pay codes.

Additionally, the trial court found appellants "failed to articulate what group issues predominate. The vague assertion that the regular rate was miscalculated without any specific detail as to what pay codes were or were not included is insufficient." Appellants simply provided pages of what appear to be QVMC pay code sheets effective in 2007 and 2009. Respondent argues four of the bonus categories appellants identified in their certification motion are listed on these pay code sheets as included in the regular rate calculation.

Based on appellants' generalized allegations, the trial court could not properly determine if individual or common issues predominate. (See *Brinker*, *supra*, 53 Cal.4th at p. 1025.) Without identifying which elements of compensation were at issue, the court could not determine if there was an ascertainable and numerous class with a defined community of interest. (*Id.* at p. 1021.)[2]

We agree and conclude the trial court properly denied certification of the regular rate subclass.

---

[2] Appellants rely on a case seeking conditional certification under the Fair Labor Standards Act (FLSA) from the Western District of Missouri, *Speer v. Cerner Corporation* (W.D. Mo. Mar. 30, 2016, No. 14-0204-CV-W-FJG) 2016 WL 1267809, to argue they do not have to demonstrate if certain categories of pay are excluded from the regular rate, this can be determined at the summary judgment stage. The standard for conditional certification under the FLSA is evidence of a "common policy or plan" (*Id.*, at p. *7) which is different than the community of interest standard for class certification under California law.

10

### 2. *Short-Shift Premium Subclass*

Appellants argue QVMC did not provide overtime pay to employees that it "flexed off" between the eighth and twelfth hour of their AWS shifts. They argue employees were not paid if they volunteered to leave early, and employees were not informed that if they did not volunteer they would be paid a short-shift premium.

Under Wage Order No. 5-2001, a health care industry employer and an employee may adopt an alternate workweek schedule allowing the employee to work days exceeding 10 hours, but less than 12 hours. (Cal. Code Regs., tit. 8, § 11050.) If the employer requests the employee work less than their regularly scheduled shift, the employer must pay a rate of one and one-half times the employee's regular rate of pay for all hours worked in excess of eight hours. (*Id.*, subd. (3)(B)(2).)

QVMC HR Manual policy No. 335.1 states: "Employees will receive a short-shift payment if provided more than eight (8) hours, but less than twelve (12) hours of work on a regularly scheduled workday. QVMC will pay one and one-half times their regular rate for all hours worked in excess of eight hours on that regularly scheduled day." The short-shift premium is not paid "if the full shift is not worked due to the employee's actions." As an example, the policy lists an employee's request to go home early. Lampe's AWS agreement states: "Employees will receive a short-shift payment if provided more than eight (8) hours, but less than twelve (12) hours of work on a regularly scheduled workday. Queen of the Valley Hospital will pay one and one-half times their regular rate for all hours worked in excess of eight hours on that regularly scheduled day."

Appellants submitted an expert declaration from Sean Berger, a consultant on data collection and analysis. Berger analyzed data provided to him by appellants' counsel to determine how often Lampe and other employees worked between 8.25 and 11.75 hours. He analyzed 981 workdays between 2007 to 2014 for Lampe and found he worked between 8.25 and 11.75 hours on 20 days (2.04 percent of the time). He evaluated a sample class of 75 employees and found 28.03 percent of the time they worked between 8.25 and 11.75 hours.

As noted earlier, QVMC has a policy to pay employees a short-shift premium if they worked more than eight hours, but less than twelve hours. Appellants presented no evidence QVMC discouraged employees from seeking a short-shift premium. QVMC, however, presented evidence that the former named plaintiffs, Vinas and Asuncion, provided testimony that they were aware of the short-shift policy and were paid short-shift premiums. Respondent also submitted the written policies provided to employees. QVMC's payroll system did not have pay code for short-shift premiums but used the overtime pay code.

In support of their claims, appellants rely on an unpublished federal district court decision, *Escano v. Kindred Healthcare Operating Co., Inc*. (C.D. Cal. Mar. 5, 2013, No. CV 09-04778 DDP (CTX)) 2013 WL 816146 (*Escano*). *Escano* is not binding on this court and is readily distinguishable. The *Escano* plaintiffs brought wage and hour claims against hospitals owned by Kindred Healthcare Operating Group, Inc. (Kindred). (*Id.* at p. *1.) The plaintiffs raised the same AWS claim raised here: that employees who left work between the eighth and twelfth hour of their shift were not paid their short-shift premium. (*Id.* at p. *2.) The plaintiffs presented evidence that Kindred had a policy of not paying employees short-shift premiums and none of the putative class members were aware of the law regarding short-shift premiums. (*Id.* at p. *3.) The chief financial officer for Kindred was not aware of the law. (*Ibid*.) Kindred employees' AWS agreements made no mention of the short-shift premium. (*Id*. at p. *4.) Kindred had no code in their payroll system for short-shift premiums. (*Ibid*.)

Based on Kindred's policy of requiring employees to leave early when patient census is low and the fact employees were not aware they were entitled to a short-shift premium, the plaintiffs were allowed to use classwide proof to show short-shift premiums were not paid. (*Escano*, *supra*, 2013 WL 816146 at p. *5.)

This case has two notable differences: first, QVMC has a written policy requiring the payment of short-shift premiums to AWS employees and; second, this requirement was included in each AWS agreement. The employees here, including Lampe, were aware of the short-shift premium and the prior named plaintiffs, Vinas and Ascusion, had

12

utilized it. In *Escano*, *supra*, 2013 WL 816146, the lack of a policy and the fact the information was not communicated to employees allowed for class issues to predominate; the same is not true here. In order to evaluate whether an individual employee was denied a short-shift premium is an individualized determination because it is dependent upon the employee's reason for leaving early from a particular shift. A short-shift premium is not paid unless the employer ends the shift early; if an employee leaves voluntarily, the premium is not owed.

Appellants also rely on language in *Escano* that an employee who is unaware of the short-shift policy could not elect to leave voluntarily and forgo their premium payment. (*Escano*, *supra*, 2013 WL 816146.) But, in *Escano*, much of the issue rested on involuntariness; here the employees were aware of the policy and many chose to leave early (without payment) when they had the opportunity.[3]

Appellants failed to present substantial evidence that employees, as a class, were required to leave early by QVMC. An individualized assessment is necessary to determine for each shift whether an employee left early because QVMC requested it or because the employee volunteered. This question cannot be determined from pay records or from expert data analysis. Pay records utilized the same code for overtime as short-shift premiums and time records only show when an employee left early, but do not provide the reason. Appellants' expert was only able to determine that 28.03 percent of the time putative class members worked a short shift, but this does not eliminate the need for a person by person analysis to determine the reason. (See *Duran*, *supra*, 59 Cal.4th at p. 31 ["There must be some glue that binds class members together apart from statistical evidence."].)

---

[3] Nurse Sherry Rubio declared that she had never been required to leave her 12-hour shift early and when she left early it was voluntarily, at her own request. The shift lead for the intensive care unit department, who had worked at QVMC since 1979, similarly testified she had never been asked to leave early and when she did leave early it was because she had volunteered. A senior X-ray technician also declared that she had never been asked to leave early and always did so voluntarily when she requested permission to leave early.

Finally, appellants have not provided any evidence that QVMC dissuaded employees from requesting short-shift premiums.  Instead, employee declarations showed they were aware of the policy and utilized it.

The trial court did not abuse its discretion in finding the claim required individualized assessment and could not be proven efficiently as a class.

### C.     Meal Break Class

Appellants raise two arguments on appeal regarding meal breaks:  (1) QVMC failed to provide a second meal break when employees worked 12 hours or more; and (2) QVMC failed to provide a meal break within the first five hours of an employee's shift.

An employer generally must provide a 30-minute meal period to all nonexempt employees who work more than five hours, and a second 30-minute meal period to employees who work more than 10 hours.  (Lab. Code, § 512, subd. (a); Cal. Code Regs., tit. 8, § 11050, subd. 11.)  "The employer satisfies this obligation if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so."  (*Brinker*, *supra*, 53 Cal.4th at p. 1040.)

### 1.     *Employee Meal Break Waivers*

Appellants argue QVMC failed to provide a second meal break to employees who worked a 12-hour shift or longer.  Appellants' theory before the trial court was that QVMC forced employees to waive their second meal break as a condition of employment.

Appellants' evidence consisted of statistical analysis:  Berger concluded the sample class worked more than 12.25 hours 52.7 percent of the time.  The data showed there were no meal punches for a second meal period when they worked longer than 12.25 hours.  Berger's analysis showed that Lampe worked more than 12.5 hours on 65 days (6.6 percent of the time) and he did not punch out for second meal on those days.

14

QVMC presented declarations from employees who stated they took a second meal break when they worked over 12 hours.[4] Appellants did not submit any employee declarations about why they failed to take a second meal break. QVMC submitted deposition transcript excerpts from putative class members who stated that they were offered the second meal period but waived it so they could go home sooner.

Wage Order No. 5-2001, subdivision 11(D) allows for voluntary written agreements to waive meal periods. (Cal. Code Regs., tit. 8, § 11050, subd. 11(D).) Respondent provided evidence that Lampe voluntarily signed a meal break waiver and other nurses also provided testimony of voluntarily waiving their meal breaks. Respondent presented declarations from 21 employees that they signed the waivers voluntarily.

Additionally, QVMC's evidence indicated the issue of employee waivers could not be addressed on a classwide basis. Each employee's written waiver form was contained in the employee's individual personnel file. In addition, the declarations and deposition transcript excerpts demonstrated the employees' ability to take meal breaks varied from department to department. The question of whether a missed meal break was due to the employer's failure to allow it or from the employee's voluntary choice not to take it requires an individualized inquiry. The evidence demonstrated QVMC's written policy provided a second meal period but allowed employees to waive it. The expert's analysis does not change the nature of the claims.

Appellants' argument seems to be that employees believed their waiver was required. An employer's dissuasion of employees from taking meal or rest breaks may result in the employer's liability, even if the employer has a written policy that complies

---

[4] A dietary aide declared if her shift lasts longer than 12 hours, she takes a 30-minute meal period regardless of whether or not she signed a meal waiver and QVMC has always provided her a second meal break when she worked more than 12 hours. The shift lead for the hospital's intensive care unit department and p.m. lead registered nurse for the surgical services department similarly declared that if they work longer than 12 hours, they take a second 30-minute meal break and they have always been provided with the second break.

15

with the law.  (See *Brinker*, *supra*, 53 Cal.4th at p. 1040.)  By extension, appellants argue, an employer's dissuasion of employees from applying for premium pay, or its failure to advise employees of their entitlement to premium pay, may result in employer liability.  Appellants, however, have not presented evidence that employees were dissuaded from applying for compensation for missed meal breaks.

Division Two of this court held in *Sotelo v. MediaNews Group, Inc*. (2012) 207 Cal.App.4th 639, 654 (*Sotelo*):  "A class . . . may establish liability by proving a uniform policy or practice by the employer that has the effect on the group of making it likely that group members will work overtime hours without overtime pay, or to miss rest/meal breaks."  In examining whether newspaper employees shared sufficient common evidence to show they were denied meal and rest breaks, the trial court found the evidence indicated " 'a wide variation among carriers in the number of hours they worked each day . . . and that their ability to take breaks turned on factors that varied substantially across the proposed class . . . .' "  (*Id*. at p. 653.)

The plaintiffs in *Sotelo* relied on *Jaimez v. Daiohs USA, Inc*. (2010) 181 Cal.App.4th 1286 (*Jaimez*), where the court found that employees had been purposefully denied overtime and meal and rest breaks.  *Jaimez* concluded the claims were amenable to class treatment due to evidence that the employer maintained "uniform policy and practice" affecting all putative class members.  (*Ibid*.)  The *Sotelo* court distinguished *Jaimez*:  " In Jaimez, there was an allegation that defendant 'had a policy of failing to permit or authorize [route sales representatives] to take rest breaks . . . .' (*Jaimez*, *supra*, 181 Cal.App.4th at p. 1304.)  Moreover, Jaimez presented evidence of a common factual issue—that '[t]he delivery schedules made it extremely difficult for [route sales representatives] to timely complete the deliveries and take all required rest breaks.' (*Ibid*.)  As with the overtime claims, appellants failed to allege a uniform policy on the part of respondents to deny putative members the ability to take rest breaks." (*Sotelo*, *supra*, 207 Cal.App.4th at pp. 654–655.)

*Sotelo* concluded the plaintiffs had not alleged that the newspaper had a uniform practices or policies that denied employees overtime or meal breaks.  (*Sotelo*, s*upra*,

207 Cal.App.4th at p. 655.) And the plaintiffs failed to show that such a policy could be established by the evidence. (*Ibid.*)

Similarly, here, appellants are arguing that QVMC had a policy requiring employees to waive meal breaks, but they have no evidence to support this contention. If QVMC, in fact, had such a policy that applied to all employees, appellants could demonstrate the claim was proper for class certification under *Jaimez, supra*, 181 Cal.App.4th 1286. Here, however, QVMC's policy provided for meal breaks as required by law, but allowed employees to waive the breaks. In *Sotelo*, the court found no common policy applied to all employees that violated state law. (*Sotelo, supra*, 207 Cal.App.4th at p. 655.) "This is very different from the circumstances here where the plaintiffs alleged, and produced specific evidence, showing the existence of a common practice (the failure to authorize and provide for meal and rest breaks) that violated state law." (*Bradley v. Networkers Internat., LLC* (2012) 211 Cal.App.4th 1129, 1153.)[5]

The trial court found appellants had not supported their claims regarding meal periods with anything other than their own testimony. "Numerous employees have

---

[5] At oral argument appellants relied on a recent decision, also cited in their reply brief: *Lubin v. The Wackenhut Corp.* (2016) 5 Cal.App.5th 926 (*Lubin*). *Lubin* involved class certification of off-duty meal breaks and rest breaks for security officers. The trial court originally granted class certification but then decertified the class after the Supreme Court's decision in *WalMart Stores, Inc. v. Dukes* (2011) 564 U.S. 388. As relevant here, the *Lubin* court concluded the plaintiffs had demonstrated The Wackenhut Corp. had a common policy of not providing meal or rest breaks. (*Lubin*, at p. 938.) The Wackenhut Corp. also had a "uniform practice" of allowing clients to decide whether to provide on-duty meal breaks. (*Id.* at p. 943.) The court found the trial court erred by not focusing on the plaintiffs' theory of liability in their complaint and instead focused on whether individualized inquiries were required to determine if, in practice, meal breaks were provided. (*Id.* at p. 941.)

The trial court here properly focused on the theories set forth in appellants' complaint. Appellants could not demonstrate QVMC had uniform policies that denied employees meal or rest breaks, or that QVMC "forced" appellants to waive their meal breaks as a condition of employment. Unlike *Lubin*, appellants cannot point to common policies or uniform practices to support their allegations.

17

declared that they have always been able to take their full 30-minute meal periods, or that if they missed a meal period, they may request and have received a meal period premium." Appellant McNair had not signed a meal period waiver because she works an 8-hour shift and appellant Lampe signed a waiver to voluntarily waive his meal break. Neither plaintiff is typical of the class they seek to certify. There is no community of interest when class representatives' claims are not typical of the class. (*Sav-On*, *supra*, 34 Cal.4th at p. 326.)

The trial court's findings that individual questions of proof predominated is supported by the fact that the reasons any particular employee might not take a meal period are more likely to predominate if the employer need only offer meal periods, but need not ensure employees take their meals. (See *Brinker*, *supra*, 53 Cal.4th at pp. 1040–1041 [California requires only that an employer make a meal period available, not that employees must eat their meals].)

Additionally, the court noted McNair testified she was responsible for scheduling meal breaks for nurses in her unit which caused a conflict of interest with the members of the class. A "finding of adequate representation will not be appropriate if the proposed class representative's interests are antagonistic to the remainder of the class." (*J.P. Morgan & Co., Inc. v. Superior Court* (2003) 113 Cal.App.4th 195, 212.) " ' "It is axiomatic that a putative representative cannot adequately protect the class if his interests are antagonistic to or in conflict with the objectives of those he purports to represent." ' " (*Seastrom v. Neways, Inc*. (2007) 149 Cal.App.4th 1496, 1502.)

### 2.    *Meal Breaks After Five Hours*

Dr. Drogin analyzed time records for 75 employees who worked 12-hour shifts from 2007 to 2014 and concluded only 11.1 percent had meal breaks of 30 minutes within the first 5 hours of their shifts. Appellants did not submit any declarations as to why employees failed to take a meal break after five hours. They also failed to submit any declarations from employees who claimed they were denied meal breaks or not provided them, if they desired them, after the fifth hour of work. The declaration they did submit from Lampe stated that he signed a meal break waiver that provided he was

18

entitled to two 30-minute meal breaks. It states: "QVMC has offered to schedule my first meal period to begin by the end of my fifth hour of work, however, this would cause the second portion of my workday to be longer than the first portion; [¶] [ ] I hereby request that I be allowed, for my own convenience, to voluntarily waive one of my two (2) meal periods. I further request that I be allowed to begin the other meal period at or near the middle of my 12-hour shift, up to but not later than the end of my tenth hour of work." The waiver stated Lampe could revoke the waiver at any time by providing one day's advance notice in writing.

Numerous other QVMC employees provided declarations that they were provided a break within five hours of starting their shift. A missed meal break does not constitute a violation if the employee waived the meal break, or otherwise voluntarily shortened or postponed it. (See *Brinker*, *supra*, 53 Cal.4th at pp. 1040–1041.)

Appellants' expert analysis showed that only 11.1 percent of employees took meal breaks within the first five hours of their shift. Appellants argue this is evidence that QVMC uniformly failed to provide timely meal breaks. But this could easily be explained by waivers like Lampe's that requested the meal break mid-shift or later. " 'Critically, if the parties' evidence is conflicting on the issue of whether common or individual questions predominate (as it often is . . . ), the trial court is permitted to credit one party's evidence over the other's in determining whether the requirements for class certification have been met . . . .' " (*Mies v. Sephora U.S.A., Inc*. (2015) 234 Cal.App.4th 967, 981.)

To determine why each employee did not take their first meal break after five hours would require an individualized determination and review of individual employee files and pay stubs. (See *Koval v. Pacific Bell Telephone Co*. (2014) 232 Cal.App.4th 1050, 1062–1063 [no common method to prove classwide liability because of the variation on how policies were communicated to each individual plaintiff].)

The trial court correctly concluded that common issues did not predominate and given the individualized inquiries required and the potential conflict between the named plaintiffs and the class, there were not substantial benefits from proceeding as a class.

19

**D.     Wage Statement Class**

In their certification motion, appellants seek to certify a class of every nonexempt hourly employee who received a pay stub since November 2010.  They describe this class as "purely derivative . . . of the wage claims."  The trial court found that because class certification was not appropriate for the overtime or meal break classes, there was no basis to certify the wage statement class which was derivative of the other wage claims.  We agree.  (See *White v. Starbucks Corp*. (N.D. Cal. 2007) 497 F.Supp.2d 1080, 1089–1090 [summary judgment of the plaintiff's claims for inaccurate wage statements was proper on the ground that these claims are derivative of the plaintiff's overtime and break claims].)

## IV.

## DISPOSITION

The judgment is affirmed.  Respondent shall recover its costs on appeal.

_____
RUVOLO, P. J.


We concur:


_____
KENNEDY, J.*


_____
RIVERA, J.


*Judge of the Superior Court of California, County of Contra Costa, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

MICHAEL LAMPE et al.,
Plaintiffs and Appellants,
v.
QUEEN OF THE VALLEY MEDICAL CENTER,
Defendant and Respondent.

A146588
Napa County No. 26-61568

BY THE COURT:

The written opinion which was filed on January 2, 2018 has now been certified for publication pursuant to rule 8.1105(b) of the California Rules of Court, and it is ordered published in the official reports.

Date: __1/23/18__                                    _____Ruvolo, P.J._____

1

Trial Court:                         Napa County Superior Court

Trial Judge:                         Hon. Diane M. Price

Counsel for Appellants:              Law Office of Joseph Antonelli, Joseph
                                     Antonelli, Janelle C. Carney

    Law Office of Kevin T. Barnes, Kevin T. Barnes, Gregg Lander

Counsel for Respondent:              Sheppard, Mullin, Richter & Hampton, Derek
                                     R. Havel, Daniel J. McQueen, Matthew A.
                                     Tobias