Filed 4/26/21  Certified for Publication (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| DEBBIE SALAZAR,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>SEE'S CANDY SHOPS,<br>INCORPORATED et al.,<br><br>    Defendants and Respondents. | B300778<br><br>(Los Angeles County<br>Super. Ct. Nos. JCCP5004<br>& BC651132) |

        APPEAL from an order of the Superior Court of Los
Angeles County.  Maren E. Nelson, Judge.  Affirmed.
        Capstone Law, Ryan H. Wu, Melissa Grant and John E.
Stobart for Plaintiff and Appellant.
        Munger, Tolles & Olson, Malcolm A. Heinicke, Katherine
M. Forster and C. Hunter Hayes for Defendants and
Respondents.

_____

Debbie Salazar appeals from an order denying her motion to certify a class of employees of respondents See's Candies, Inc., and See's Candy Shops, Incorporated (collectively, See's). Salazar alleges that See's did not provide required second meal breaks to shop employees who worked shifts longer than 10 hours. It is undisputed that See's official policy is to provide such breaks. However, Salazar contends that, in practice, See's consistently failed to provide the breaks because the preprinted form that it used to schedule employee shifts did not include a space for second meal breaks.

The trial court denied class certification on the grounds that: (1) individual issues would predominate concerning whether See's consistently applied a practice of failing to offer second meal breaks, and (2) Salazar failed to provide a trial plan that offered a manageable method to adjudicate classwide liability, including See's defenses, without individual inquiry.

We affirm. The trial court carefully analyzed the evidence that Salazar presented in support of her claim that she could establish liability through common proof. That evidence included time records showing that 24 percent of shifts longer than 10 hours actually included a second meal period. In light of that evidence, the trial court reasonably concluded that at least some class members were offered a second meal period in accordance with the law. Thus, individual testimony would be necessary to show that See's consistently applied an unlawful practice, resulting in a trial that would "devolve into a series of mini-trials." Moreover, Salazar failed to provide a trial plan that would permit See's to "present its defenses without individual inquiry." The trial court therefore properly exercised its discretion to deny class certification.

## BACKGROUND

### 1. See's Meal Break Policies and Practice

See's sells candy in retail shops. California law requires that employees of such a business who work a shift longer than 10 hours must be provided two 30-minute meal periods. (Lab. Code, § 512, subd. (a); Cal. Code Regs., tit. 8, § 11070, subd. (11(A) & (B) (Wage Order 7).) Employees are entitled to one additional hour of pay if they miss a meal period. (Lab. Code, § 226.7, subd. (c); Wage Order 7, subd. 11(D).)

See's official policy complied with California law by requiring a second meal period when an employee's work shift exceeded 10 hours. This policy was described in See's Human Resources Manual and in instructions to shop managers. Employees have "online access" to See's written policy in the candy shops where they work.

The policy and procedures document given to new employees (entitled "Welcome to See's") also informed the employees that meal breaks were required. However, it did not specifically refer to a second meal break for shifts over 10 hours. Rather, it stated that "[b]reaks are assigned on the Break and Lunch Schedule," and instructed employees to "check their schedule at the beginning for the shift and initial immediately after their break."

The Break and Lunch Schedule (Scheduling Form) was a preprinted form containing columns for scheduling "lunch" as well as a required first and second 10-minute break. The form did not contain a column for a second meal break. According to See's, this was because See's did not schedule shifts that exceeded 10 hours and it was "very rare" for employees to work such shifts.

See's time records showed the length of employee shifts. Approximately 0.3 percent of See's employee shifts during the relevant time period were longer than 10 hours. According to analysis by Salazar's expert, there were 3,351 shifts of more than 10 hours from February 17, 2013, to October 3, 2018. Of these shifts, 2,227, or about 66 percent, had no recorded second meal break.

According to See's expert, approximately 76 percent of See's employee shifts over 10 hours did not include a recorded second meal break. Twenty-four percent recorded such a break (766 shifts out of a total of 3,226 shifts). Of the 833 employees who worked shifts over 10 hours, 360, or about 43 percent, took a recorded second meal break during at least one such shift.

This data was derived from See's electronic timekeeping system, called Kronos. The Kronos system includes data from "time punch" entries by employees as well as data that managers or supervisors later enter based upon manual records when employees fail to record their time punches. The trial court found that the "electronic data is substantially accurate and that any errors are due to inadvertent human inputting error."

## 2. Salazar's Class Certification Motion

Salazar's operative complaint alleged claims for unpaid overtime, unpaid minimum wages, failure to provide rest and meal periods, failure to provide wage statements and to maintain payroll records, failure to timely pay wages on termination, and unfair and unlawful business practices under Business and Professions Code section 17200.

Salazar sought certification of two classes: a "single staffing class" and a "meal break class."[1] With respect to the meal break class, Salazar argued that See's scheduling procedures provided common evidence of a practice to deny employees a second meal period during shifts exceeding 10 hours. Salazar cited evidence that See's relied on the Scheduling Form to schedule meal breaks.

In opposition to the motion, See's argued that See's did not rely only on the Scheduling Form to provide second meal breaks, but also provided employees with training on its policies and required its shop managers to implement those policies.

In support of its opposition, See's submitted declarations from 55 employees, including both managers and shop employees. The managers testified generally about See's policy of providing a second meal break for shifts over 10 hours. Most of the employee declarants testified that they were aware of this policy. More than half of the employee declarants had worked shifts longer than 10 hours, and almost all of these testified that they took second meal breaks during such shifts at least some of the time. Four employees testified that they occasionally chose not to take a second meal break so that they could leave work earlier or get overtime pay.

### 3.   The Trial Court's Ruling

The trial court denied certification of the meal break class on two grounds. First, the court found that Salazar had failed to

---

[1] The single staffing class concerned employees who worked alone in a store and, as a result, allegedly were not able to take breaks. The trial court denied certification of both classes, but Salazar seeks reversal only of the trial court's order with respect to the meal break class.

show that she could prove through common evidence that See's had a consistent practice to deny second meal breaks. The court inferred from the fact that 24 percent of the shifts over 10 hours actually included a recorded second meal break that "at least some" employees were offered such a break. The court explained that "individualized testimony of both managers and employees" was therefore "permissibly tendered to show that the proper breaks were offered (or not) and that the complained of practice was (or was not) consistently applied." The court concluded that this individualized evidence would "devolve into a series of mini-trials."

Second, the trial court found that Salazar's proposed trial plan was inadequate to manage these individual issues. The court noted that Salazar's trial plan proposed to resolve the issue of liability through summary judgment, but did not explain how. The court also observed that Salazar did not explain "how See's will be able to present its defenses without individual inquiry." The court concluded that Salazar's proposed trial plan lacked "the kind of detail needed to conclude that trial of this case on a class basis is manageable."

## DISCUSSION

### 1. Requirements for Class Certification and Standard of Review

Class actions are authorized "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court." (Code Civ. Proc., § 382.) To certify a class, "[t]he party advocating class treatment must demonstrate the existence of an ascertainable and sufficiently numerous class, a well-defined community of interest, and substantial benefits from certification

6

that render proceeding as a class superior to the alternatives." (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1021 (*Brinker*).) The community of interest factor in turn has three requirements: (1) common questions of fact or law that predominate over individual issues; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class. (*Ibid.*)

Predominance is the class certification requirement at issue in this case. The ultimate question in analyzing whether the predominance requirement has been met is whether " 'the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' " (*Brinker, supra,* 53 Cal.4th at p. 1021, quoting *Collins v. Rocha* (1972) 7 Cal.3d 232, 238.) To answer this question, a court must "examine the allegations of the complaint and supporting declarations [citation] and consider whether the legal and factual issues they present are such that their resolution in a single class proceeding would be both desirable and feasible." (*Brinker*, at pp. 1021–1022.)

In addition to deciding whether common issues predominate, a court considering class certification must determine whether the remaining individual issues can be resolved "fairly and efficiently." (*Duran v. U.S. Bank National Assn.* (2014) 59 Cal.4th 1, 28–29 (*Duran*).) That includes individual issues arising from affirmative defenses. (*Id.* at p. 29.) "In considering whether a class action is a superior device for resolving a controversy, the manageability of individual issues is just as important as the existence of common questions uniting the proposed class." (*Ibid.*)

7

Our review of the trial court's class certification ruling is "narrowly circumscribed." (*Brinker, supra,* 53 Cal.4th at p. 1022.) We review the trial court's ruling for abuse of discretion. " 'A certification order generally will not be disturbed unless (1) it is unsupported by substantial evidence, (2) it rests on improper criteria, or (3) it rests on erroneous legal assumptions.' " (*Id.* at p. 1022, quoting *Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069, 1089.) Because predominance is a factual issue, the trial court's finding that individual issues predominate must be affirmed if it is supported by substantial evidence. (*Brinker,* at p. 1022.)

We review the trial court's ruling on the feasibility of managing individual issues at trial for abuse of discretion. (*Duran, supra,* 59 Cal.4th at pp. 49–50.)

**2.      Substantial Evidence Supports the Trial Court's Conclusion that Individual Issues Would Predominate at Trial**

a.      *Evidence of See's Scheduling Form alone is not sufficient to determine liability*

Salazar acknowledges that See's official meal break policy complies with California law. Salazar's theory is that, despite that policy, See's consistent *practice* was to deny second meal periods when shifts exceeded 10 hours. Salazar claims that she can prove this consistent practice, and therefore establish liability, through common proof.

As in the trial court, on appeal Salazar's arguments focus on See's Scheduling Form. Salazar relies on the fact that the form contained no space for a second meal break and cites evidence that See's used the form to assign breaks for each shift. Salazar also cites See's time records showing that a high

8

percentage of shifts longer than 10 hours did not include a recorded second meal break (76 percent, according to See's expert).

The trial court concluded that the Scheduling Form itself provided *some* common evidence of a "practice of denying meal breaks to those working over ten hours." The court similarly reasoned that the evidence See's intended to introduce concerning its legally compliant policies did not depend upon individual issues. See's intended to provide evidence of its policy requiring second meal breaks along with evidence that its managers were trained on that policy. The trial court observed that the manager testimony that would be necessary for this purpose "does not appear to create a manageability problem or implicate individual issues."

However, the trial court also reasonably concluded that the trial could not fairly be *limited* to such common evidence. The court reasoned that, in light of the evidence, individualized testimony was necessary to determine whether See's had a consistent practice of denying second meal breaks.

Substantial evidence supports the trial court's conclusion. Although evidence from See's time records showed that a high percentage of shifts over 10 hours included no second meal break, that evidence also showed that the Scheduling Form itself was not sufficient to establish that See's had a consistent practice of denying such breaks. The trial court inferred from the fact that many employees recorded a second meal break that "at least some" employees were offered such a break.[2] If credited, that

_____

[2] The evidence was actually more compelling than the trial court stated. The trial court inferred "from the fact that 24% of

9

inference means that the Scheduling Form could not have been See's exclusive means to provide a second meal break to employees who worked shifts over 10 hours.

Under the substantial evidence standard, we must credit the trial court's reasonable inferences, even if a competing inference could be drawn. (*Boling v. Public Employment Relations Bd.* (2018) 5 Cal.5th 898, 912–913.) An inference is reasonable if it is a product of logic and reason and rests on the evidence. (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1632–1633.)

The trial court's inference was logical. From the fact that 24 percent to 33 percent of shifts over 10 hours included a recorded second meal break—involving 43 percent of the employees who worked such shifts—one may reasonably infer that See's managers were instrumental in providing at least some of those breaks. It seems unlikely that such a high percentage of employees would have been able to take second meal breaks unilaterally without the support of their managers.

The inference also finds support in the evidence. As discussed above, See's provided declarations from managers who testified that See's implemented its policy to provide second meal

---

*employees* in the Second Meal Period Class did record a meal period, that at least some were offered a second meal period." (Italics added.) However, the analysis by See's expert actually showed that approximately 24 percent of *shifts* over 10 hours included a recorded second meal break. Approximately 43 percent of the *employees* who worked a shift over 10 hours recorded a second meal break during at least one of those shifts. Thus, the evidence showed that about 43 percent of employees who worked a shift more than 10 hours were able to take a second meal break despite the Scheduling Form.

breaks for shifts over 10 hours. It also provided declarations from numerous shop employees who testified that they were aware of See's policy to provide second meal breaks. Some of those employees stated that they did take a second meal period when they worked over 10 hours (or were paid the required compensation for missing the meal period), and some said that they could have taken a second meal break but chose not to do so. While these declarations were general and did not explain the specific mechanism through which See's provided a second meal break,[3] they did support the inference that See's applied its legally compliant second meal break policy at least some of the time.

The trial court also reasonably concluded that a "significant number of employees" would likely need to offer individual testimony at trial for the finder of fact to determine whether See's consistently applied a practice of denying second meal breaks. The employee declarations that See's provided showed that some employees could have taken second meal breaks but chose not to do so. Based upon the number of shifts over 10 hours that actually had recorded second meal breaks, and considering the large number of employees who were able to take such breaks (and therefore presumably knew that they could do so), it is reasonable to conclude that a significant number of employees made their own decisions to decline second meal breaks that they otherwise could have taken. Individual

---

[3] As the trial court noted, See's evidence did not show "how employees are made aware that a second meal break may be taken or when (i.e. in writing or orally)." Likewise, See's written policies did not "specifically address how an employee is to know when to take a meal or rest break when working in excess of 10 hours."

11

testimony would have been necessary to distinguish such situations from occasions in which See's managers failed to provide a second meal break.

Salazar argues that the Scheduling Form made such individual testimony unnecessary because undisputed evidence showed that the form was See's *only* means to provide a second meal break. The record does not support the argument.

Salazar cites the "Welcome to See's" booklet and testimony by See's Director of Candy Shops, Karen Patterson, who was responsible for enforcing See's meal break policy. As discussed above, the Welcome to See's booklet simply stated that breaks "are assigned on the Break and Lunch Schedule." The booklet did not state that the schedule was the only means to obtain a required break.

Patterson's cited testimony also did not include such a statement. Salazar claims that Patterson testified about a See's mandate "that meal and rest breaks were to be provided and taken according to the [Scheduling Form] and that the only reminders to take breaks provided to shop employees . . . were the [Scheduling Form] and a clock on the wall." Patterson actually testified that the "shop management team" managed staff to comply with state and federal laws "in a few ways," including to "make sure that the break and lunch schedules are posted and breaks and lunches are taken at the appropriate time." As other examples of management techniques, Patterson mentioned legal postings on bulletin boards and communications from "corporate," including "topics from human resources" that are "covered with the teams." She explained that it was the job of the shop management team to "ensure that employees are getting their breaks at the appropriate time." In response to a question whether, "other than the posters in the store," there were reminders telling employees when to take their rest breaks,

12

Patterson answered, "The lunch and break schedule, and we have a clock on the wall in every shop." This testimony was far from an admission that the Scheduling Form was See's exclusive means to schedule legally required breaks.

Moreover, in her declaration Patterson referred to another reason why the Scheduling Form could not have been the final word on whether employees working a shift over 10 hours were offered a second meal period. She explained that "See's employees are usually scheduled to work fewer than 10 hours in a single shift. However, See's employees are trained that they are entitled to the breaks provided in See's Breaks and Meal Periods policy based on the total number of hours they work, even if their total hours worked exceeds the total hours for which they are scheduled." According to this explanation, the Scheduling Form was irrelevant for shifts of more than 10 hours that had originally been scheduled for less. Second meal breaks for such shifts would not have been scheduled, but might nevertheless have been offered. Individual testimony would have been necessary to determine when that occurred.

In light of this evidence, the trial court reasonably found that individual issues would predominate in determining whether See's consistently denied second meal breaks.

### b. *The trial court adequately considered Salazar's theory of proof*

Salazar argues that the trial court's ruling was erroneous because it "misapprehended" Salazar's theory of liability. Salazar claims that her theory of proof depended solely on the Scheduling Form and related evidence allegedly showing that the form was See's exclusive means to schedule breaks. She claims that "[n]othing else was required for certification," and that she "never planned on calling numerous witnesses to establish a

13

consistent practice." Thus, she argues, the trial court made an "erroneous legal assumption to find that testimony from numerous witnesses would be needed."

We disagree. The trial court's order shows that the court fully understood Salazar's theory of proof. The court recognized that, "where an employer's written policies are legally compliant but there is a de facto practice of violating wage and hour laws, class treatment *may* be appropriate." The court understood that Salazar relied on such a theory. The court correctly explained Salazar's claim that See's alleged "unlawful meal and rest break practice" could be proved through common evidence by "(1) examination of the [Scheduling Form] and (2) time records, which Salazar argues raise an inference that the meal periods were not provided." The court clearly understood Salazar's theory but found that, based on the issues and the evidence, that theory was not adequate to allow the finder of fact to decide liability based only upon common proof.

In light of the evidence showing how many shifts over 10 hours actually included a second meal break, the trial court properly concluded that the parties must be permitted to introduce individual testimony to determine whether breaks were consistently denied. Even if Salazar did not intend to introduce such testimony, See's would be permitted to do so to rebut Salazar's claims.

Without individual testimony, a jury could not determine whether the employees who worked the 66 percent to 75 percent of shifts that did not include a second meal break missed that break because See's did not offer it or because the employees chose not to take it. As discussed above, the trial court reasonably found that See's was entitled to introduce such individual testimony at trial.

14

Salazar claims that such testimony is irrelevant to class certification because it concerns the affirmative defense of "waiver." Salazar argues that the trial court erred in finding that such evidence created individual issues because an employee cannot waive a break that is never offered. (See *Brinker, supra,* 53 Cal.App.4th at p. 1033.)

The legal principle that Salazar cites is correct but irrelevant. See's proposed to introduce individual testimony that employees in fact were *offered* second meal breaks but declined to take them for personal reasons. Such testimony, if credited, would negate liability. As the court explained in *Brinker,* an employer is obligated to "provide a meal period," meaning that the employer must relieve its employees of all duty, relinquish control over their activities, and permit them a reasonable opportunity to take an uninterrupted break. (*Brinker, supra,* 53 Cal.App.4th at p. 1040.) However, the employer is not obligated to "police meal breaks and ensure no work thereafter is performed." (*Ibid*.) Thus, an employer must provide an opportunity for a required meal break but need not ensure that the employee takes it.

Class certification is generally inappropriate if liability can be established only through individual proof. (See *Duran, supra,* 59 Cal.4th at p. 30 [" 'Only in an extraordinary situation would a class action be justified where, subsequent to the class judgment, the members would be required to individually prove not only damages but also liability' "], quoting *City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 463 (*City of San Jose*); see also *Hale v. Sharp Healthcare* (2014) 232 Cal.App.4th 50, 63 [class certification is inappropriate where the *fact* of damage, rather than the amount of damages, is subject to individual proof].) The need for individual testimony to determine whether employees voluntarily decided to work through their breaks therefore

15

supports the trial court's finding that class certification was inappropriate here.

The court in *Lampe v. Queen of the Valley Medical Center* (2018) 19 Cal.App.5th 832 (*Lampe*) reached a similar conclusion. In that case, the plaintiffs claimed that the defendant, a hospital, forced its employees to waive their second meal break. The plaintiff provided evidence that employees did not take their second meal breaks, but offered no evidence concerning why they failed to do so. (*Id.* at pp. 847–848.) The defendant provided testimony that employees were offered a second meal period but voluntarily waived the meal period so that they could go home earlier. (*Id.* at p. 848.) The court concluded that "[t]he question of whether a missed meal break was due to the employer's failure to allow it or from the employee's voluntary choice not to take it requires an individualized inquiry." (*Ibid.*) Citing *Brinker,* the court noted that individual evidence concerning the reasons why any particular employee did not take a meal period is more likely to predominate where "the employer need only offer meal periods, but need not ensure employees take their meals." (*Lampe*, at p. 850, citing *Brinker, supra,* 53 Cal.4th at pp. 1040–1041.) The same analysis applies here.

Salazar's argument that the individual testimony See's proffered concerned an affirmative defense does not change this analysis. Where an employer fails to provide time records showing that a meal break was taken, a presumption can arise that the employee was not offered such a break. In that case, an employer's claim that a break was in fact offered but the employee declined it is an affirmative defense that the employer must prove. (See *Donohue v. AMN Services, LLC* (2021) 11 Cal.5th 58, 74–76 (*Donohue*); *Safeway Inc. v. Superior Court*

16

(2015) 238 Cal.App.4th 1138, 1159 (*Safeway*), citing *Brinker, supra,* 53 Cal.4th at p. 1052 (conc. opn. of Werdegar, J.).)[4]

However, as the trial court correctly recognized, this presumption is rebuttable. (See *Donohue, supra,* 11 Cal.5th at pp. 75–76; *Safeway, supra,* 238 Cal.App.4th at p. 1159; *Brinker, supra,* 53 Cal.4th at p. 1052 (conc. opn. of Werdegar, J.).) The trial court here decided that the individual issues arising from See's affirmative defense precluded certification. That decision was within the trial court's discretion. (See *Duran, supra,* 59 Cal.4th at pp. 28–29 ["In certifying a class action, the court must also conclude that litigation of individual issues, including those arising from affirmative defenses, can be managed fairly and efficiently"].)

It may be that See's Scheduling Form precluded See's from offering a second meal break to some employees for shifts over 10 hours. However, the question facing the trial court was not what the evidence would ultimately show, but whether that evidence was common to the class. Because the Scheduling Form itself could not establish liability on a common basis, the trial court

---

[4] Of course, this presumption concerns only those instances where an employee did not actually *take* a second meal break. The trial court did not decide whether the undisputed fact that See's employees took second meal breaks 25 to 33 percent of the time during shifts over 10 hours itself means that See's did not "consistently" deny second meal breaks. (See *Brinker, supra,* 53 Cal.4th at p. 1033 ["Claims alleging that a uniform policy *consistently* applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment," italics added].) We affirm the trial court's ruling on the findings that the court made, and therefore also do not consider that question.

17

reasonably concluded that individual testimony would predominate.

### c. *The trial court did not err by weighing the evidence relevant to predominance*

Contrary to Salazar's contention, the trial court was not obligated to ignore the individual testimony that See's offered merely because it was inconsistent with Salazar's theory. Salazar cites the requirement that, in considering whether to certify a class, a court must focus on the plaintiff's theory of recovery. (See *Brinker, supra,* 53 Cal.4th at p. 1021 [the question of predominance "hinges on 'whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment' "], quoting *Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 327.) Salazar claims that, in considering class certification, a trial court "does not focus on whether the submitted evidence proves the merits" of the plaintiff's theory, but "must assume the class claims have merit." Thus, Salazar suggests that the trial court was required to accept that the Scheduling Form provided a method to prove liability through common evidence simply because that was Salazar's trial theory.

This is wrong for several reasons. First, Salazar's argument leaves no room for the trial court to assess the evidence. Salazar misinterprets the requirement that a court ruling on class certification must consider the plaintiff's theory of proof. That consideration does not require that a court simply accept a plaintiff's assertion that its theory of liability can be proved through common evidence. To the contrary: Our Supreme Court has made clear that a trial court considering class certification must analyze the facts if necessary to determine whether common or individual issues predominate.

18

(See *Brinker, supra,* 53 Cal.4th at p. 1025 ["To the extent the propriety of certification depends upon disputed threshold legal or factual questions, a court may, and indeed must, resolve them"].)

While a court should not gratuitously decide merits issues, it must resolve those that are necessary for certification. And a court may sort through disputed evidence to do so. (*Dailey v. Sears, Roebuck & Co.* (2013) 214 Cal.App.4th 974, 991 ["if the parties' evidence is conflicting on the issue of whether common or individual questions predominate . . . , the trial court is permitted to credit one party's evidence over the other's in determining whether the requirements for class certification have been met"]; accord, *Lampe, supra*, 19 Cal.App.5th at p. 851.)

Thus, a class plaintiff's theory of common proof "must have a foundation in the evidence." (*Payton v. CSI Electrical Contractors, Inc.* (2018) 27 Cal.App.5th 832, 842 (*Payton*).) Simply alleging a uniform practice is not enough; rather, a class plaintiff "must present substantial evidence that proving both the existence of the defendant's uniform policy or practice and the alleged illegal effects of that policy or practice could be accomplished efficiently and manageably within a class setting." (*Cruz v. Sun World Internat., LLC* (2015) 243 Cal.App.4th 367, 384.)

Second, as the trial court correctly recognized, "the class action procedural device may not be used to abridge a party's substantive rights." (*Duran, supra,* 59 Cal.4th at p. 34.) The reason for this is that " '[c]lass actions are provided only as a means to enforce substantive law. Altering the substantive law to accommodate procedure would be to confuse the means with the ends—to sacrifice the goal for the going.' " (*Ibid.,* quoting *City of San Jose, supra,* 12 Cal.3d at p. 462.) In deciding whether to certify a class, the trial court could not limit its focus only to

19

Salazar's proof if doing so meant that See's would be precluded from presenting evidence supporting a potentially meritorious defense. (See *Duran,* at p. 35 ["Under Code of Civil Procedure section 382, just as under the federal rules, 'a class cannot be certified on the premise that [the defendant] will not be entitled to litigate its statutory defenses to individual claims' "], quoting *Wal-Mart Stores, Inc. v. Dukes* (2011) 564 U.S. 338, 367.)

Thus, the trial court acted within its discretion in deciding that individual issues would predominate at trial. That decision was supported by substantial evidence, and we will not disturb it on appeal.

3.     **The Trial Court Did Not Abuse Its Discretion In Deciding that Salazar's Trial Plan Was Inadequate to Manage Individual Issues**

As discussed above, even when common issues predominate over individual issues, a class should not be certified if there is no way to manage the remaining individual issues "fairly and efficiently." (*Duran, supra,* 59 Cal.4th at pp. 28–29.) The party seeking certification must show that such individual issues are manageable. Thus, "[i]n wage and hour cases where a party seeks class certification based on allegations that the employer consistently imposed a uniform policy or de facto practice on class members, the party must still demonstrate that the illegal effects of this conduct can be proven efficiently and manageably within a class setting." (*Id.* at p. 29.)

The trial court here properly exercised its discretion in concluding that Salazar failed to provide a trial plan that was adequate to manage the individual issues. The plan that Salazar proposed focused primarily on dispositive motions as a means to decide liability. In the event that trial was necessary, Salazar offered only the vague promise that she could "prove Defendant's

20

liability through Defendants' own policy documents and handbooks, shift scheduling documents and records, as well as deposition and witness testimony, including [See's] corporate designees and managers, and class members." Salazar did not provide any means to prove that See's consistently *applied* a practice of denying second meal breaks without individualized evidence, other than by relying on the referenced "shift scheduling documents and records." As discussed above, those documents were inadequate for that purpose.

As the trial court noted, Salazar's trial plan also did not provide any means to litigate See's defenses "without individual inquiry." Our Supreme Court explained in *Duran* that, "[w]hile class action defendants may not have an unfettered right to present individualized evidence in support of a defense, our precedents make clear that a class action trial management plan may not foreclose the litigation of relevant affirmative defenses, even when these defenses turn on individual questions." (*Duran, supra,* 59 Cal.4th at p. 34.)

Salazar's proposed trial plan recognized the obligation to litigate See's affirmative defenses, but provided no means other than individualized evidence to do so. Salazar claimed that See's would have an opportunity to present any affirmative defenses, but, on the question of how this would be done, offered only the observation that See's could "present evidence regarding deviations in policies and individual issues at trial." Rather than providing some common means to decide See's affirmative defenses, this vague promise served only to emphasize the individual nature of those defenses.

Salazar's trial plan lacked any specific procedural mechanisms to manage the individual issues. The trial court

21

therefore acted within its discretion in finding that plan inadequate.  (See *Payton, supra,* 27 Cal.App.5th at pp. 844–845 [trial plan was inadequate where it failed to provide any specific procedural tools to manage individualized issues].)

## DISPOSITION

The trial court's order is affirmed.  See's is entitled to its costs on appeal.

LUI, P. J.

We concur:

ASHMANN-GERST, J.

HOFFSTADT, J.

Filed 5/10/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| DEBBIE SALAZAR, | B300778 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. Nos. JCCP5004 & BC651132) |
| v. | |
| SEE'S CANDY SHOPS, INCORPORATED et al., | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendants and Respondents. | |

THE COURT:

The opinion in the above-entitled matter filed on April 26, 2021, was not certified for publication in the Official Reports.

For good cause it now appears that the opinion should be published in the Official Reports, and it is so ordered.

LUI, P. J.       ASHMANN-GERST, J.       HOFFSTADT, J.